DICKERSON *v.* TRI-COUNTY DRAINAGE DISTRICT.

Opinion delivered May 19, 1919.

1. STATUTES—CONFLICT.—Where statutes conflict the later statutes must prevail.

2. EMINENT DOMAIN—COMPENSATION FOR TAKING—REMEDY.—Constitution, article 2, section 22, declaring that "private property shall not be taken, appropriated or damaged for public use, without just compensation therefor," relates entirely to the owner's right to compensation, but not to the remedy therefor.

3. SAME—TAKING PROPERTY FOR DITCH.—Taking property for a drainage ditch falls within the State's right of eminent domain, and the right may be exercised without notice to the property owner and without giving a hearing upon that question.

4. SAME—LEGISLATIVE METHOD FOR ASCERTAINING COMPENSATION.— Where the Legislature provides a method for ascertainment of compensation to be allowed owners for land taken under eminent domain for construction of drainage ditches, the constitutional guaranties are complied with.

5. CONSTITUTIONAL LAW—DUE PROCESS—DITCH LAW.—The provisions for appeal and for jury trial in Acts 1909, p. 829, constitutes due process, though the act provides that where the commissioners make no return of damages to any particular tract of land, "it shall be deemed a finding by them that no damages will be sustained."

6. DRAINS—TAKING PRIVATE LAND—RIGHT OF APPEAL.—A proceeding to obtain privately owned land for ditches for drainage districts is *in rem,* and when the statutory notices are properly given, all property owners become parties, and have the right of appeal, whether they actually appear at the hearing or not.

7. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—JURY.—Constitution, article 12, section 9, guaranteeing jury trial in condemnation proceedings, applies to condemnation proceedings by private corporations, and not to proceedings by a drainage district for the taking of private property for a ditch.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; affirmed.

*C. W. Norton,* for appellant.

1. The Crittenden Circuit Court was without jurisdiction.

2. It did not in fact make any judgment concluding the question of plaintiff's damages.

3. Plaintiff's failure to appear and assert his damages did not affect his right to be paid for his land. Act 279, Acts 1909, § 8; 101 N. W. 2. The county court had exclusive jurisdiction. Art. 7, § 28 Const.; 79 Ark 158; 111 *Id.* 149. The circuit court made no judgment concluding the question of plaintiff's damages for the land taken and there has been no adjudication of compensation to which he was clearly entitled. 184 S. W. 453. Plaintiff's right is a personal one, not an adjunct to the land and could not be affected by any judgment without jurisdiction of plaintiff's person, and he was not present.

*A. B. Shafer,* for appellee.

A drainage district is not a corporation and art. 12, § 9, Constitution does not apply. 64 Ark. 555; 44 S. W. 707; 78 Ark. 580; 94 S. W. 711; 204 Fed. 299-305. Drainage districts are not corporations. Acts 1909, No. 279. The State may, through its agencies take property without first making compensation. 32 Ark. 17-25; 186 S. W. 604. See also 17 Ark. 572; 167 U. S. 548; 8 Wendell (N. Y.) 85; 22 Am. Dec. 622; 14 Ohio 147; 45 Am. Dec. 529.

2. The district was properly organized in the Crittenden Circuit Court. 111 Ark. 149; 163 S. W. 512; Acts 1909, No. 279. Plaintiff failing to appear, or plead or appeal acquiesced in the proceedings. 128 Cal. 477. The State and its agencies are only required to make just compensation, but in doing so may take into consideration the benefits accruing to land without a jury. Wigmore on Ev., Par. 1353-4, 2492. The cases cited by appellant do not apply, as Mississippi and Nebraska both require compensation before property can be taken, but there is no such provision in our Constitution except as to "Corporations"; and as we have seen drainage districts are not corporations, but State agencies.

McCULLOCH, C. J. Tri-County Drainage District is, as its name implies, a drainage improvement district, and was established by order of the circuit court of Crittenden County pursuant to the general statutes of the State authorizing the creation of such districts. Acts

1909, p. 829, Acts 1911, p. 193, Acts 1913, p. 738. The district embraces lands in Crittenden, Cross and St. Francis counties. Appellant is the owner of a certain tract of land situated in the district and in St. Francis County, and he instituted this action to recover the value of about nineteen acres of land alleged to have been taken and used by appellee drainage district in the construction of one of the ditches which constitutes the drainage system authorized in the organization of the district. Appellee filed an answer in which appellant's ownership of the land was admitted, and it was also admitted that the land was taken for use in construction of the ditch, but other proceedings were pleaded in the answer as a bar to the right of appellant to recover compensation in this action. The court overruled the demurrer to the answer and appellant elected to stand upon the demurrer and suffered judgment to be rendered against him, from which an appeal has been prosecuted to this court.

The statute under which the drainage district was organized provides, in substance, that a drainage district may be created upon the petition of property owners and that after the preliminary survey is made and filed showing the extent of the improvement, notice of the hearing shall be given by publication, and that on the day mentioned in the notice a public hearing shall be held by the court and that owners of property in the proposed district may protest against its organization. Upon that hearing the court either establishes the district or refuses to do so, and when the district is established by an order of the court a board of commissioners is named for the purpose of carrying out the project. Where the district is to embrace lands in a single county the proceedings are to be had in the county court, but where the district embraces lands in more than one county, the statute provides that the proceedings shall be had in the circuit court of one of those counties, and that in the latter case the words "county court" and "county clerk" where found in the statute shall mean "circuit court" or "circuit clerk." The statute provides for an appeal by any

property owner from the order of the court either creating or establishing the district. The statute then provides that upon the creation of a district and the appointment of a board of commissioners, said board shall prepare plans for the proposed improvement and procure estimates as to the cost thereof. One of the provisions in that respect reads as follows: "Such plans and specifications shall show, not merely the location, width and depth of the ditches, but the work to be done in removing obstructions from water courses, building of pumping stations, flumes, floodgates, and fences to protect the ditches, together with all other work contemplated." Sec. 4, Acts 1911, *supra.* These plans are to be filed with the clerk of the court accompanied by a map showing the location of all main and lateral ditches, and specifications describing the character of improvement to be made, the width and depth of the ditches, and the probable cost of all the work to be done. Those parts of the statute which relate to the assessment of damages, if any, to the lands in the district read as follows:

"The commissioners shall also assess all damages that will accrue to any land owner by reason of the proposed improvement, including all injury to lands taken or damaged; and where they return no such assessment of damages as to any tract of land, it shall be deemed a finding by them that no damage will be sustained. * * *

When their assessment is completed the commissioners shall subscribe said assessment and deposit it with the county clerk, where it shall be kept and preserved as a public record. Upon the filing of said assessment the county clerk shall give notice of the fact by publication, two weeks in some weekly newspaper issued in each of the counties in which the lands of the district may lie. Said notice shall give a description of the lands assessed for drainage purposes in said district; that the owners of said lands, if they desire, may appear before the county court on a certain day (naming the day) and present complaints, if any they have, against the assessment of any lands in said district.

Any owner of real property within the district who conceives himself to be aggrieved by the assessment of benefits or damages or deems that the assessment of any land in the district is inadequate, shall present his complaint to the county court at the first regular, adjourned or special session, held more than ten days after the publication of said notice; and the said court shall consider the same and enter its finding thereon, either confirming such assessment or increasing or diminishing the same; and its finding shall have the force and effect of a judgment, from which an appeal may be taken within twenty days, either by the property owners or by the commissioners of the district." Sec. 1, Act of 1913, *supra.*

Section 8 of the Act of 1909, *supra,* read as follows:

"Any property owner may accept the assessment of damages in his favor made by the commissioners; or acquiesce in their failure to assess damages in his favor, and shall be construed to have done so unless he gives to said commissioners within thirty days after the assessment is filed, notice in writing that he demands an assessment of his damages by a jury; in which event the commissioners shall institute in the circuit court of the proper county an action to condemn the lands that must be taken or damaged in the making of such improvement; which action shall be in accordance with the proceedings for condemnation of rights-of-way by railroad, telegraph and telephone companies, with the same right of paying into court a sum to be fixed by the circut court or judge, and proceeding with the work before assessment by the jury. If there is more than one claimant to the lands, all claimants may be made parties defendant in such suit, and the fund paid into court, leaving the claimant to contest in that action their respective rights to the fund."

We must, in the state of the pleadings before us, treat it as conceded that the terms of the statute were complied with concerning the assessment of damages to lands taken or damaged in the construction of the improvement, but appellant seeks to uphold his right of ac-

tion under the Act of 1905, p. 143, which provides that whenever any levee or drainage district "may have appropriated, or shall appropriate any land for right of way for the construction and maintenance of either levees, ditches, canals, or drains, and constructed levees or drains thereon, without having procured the consent of the owner, or owners, of such land to construct the levees, or drains, or procured the right-of-way, either by purchase, donation or condemnation, such owner, or owners, where their cause of action has not been barred by the statute of limitation, shall have a cause of action against such * * * levee or drainage district for the market value of the land at the time it was actually occupied."

The Act of 1909 is the last expression of the legislative will on this subject and the statute of 1905 must yield to the extent that it may be found to be in conflict with it. Whether or not there is in fact any irreconcilable conflict in the statutes, we need not now stop to decide. The former statute was construed by this court, and its validity upheld in the case of *Young, Admr.*, v. *Red Fork Levee District*, 124 Ark. 61.

According to the allegations of the complaint, appellant's land has already been taken and used in the construction of the improvement, and there is not involved in this controversy any question about the method of taking. The only question involved relates to the compensation for the property thus taken for the public use. The statute hereinbefore referred to provided a method for the ascertainment of damages or the compensation to be rendered to the owner of property taken or damaged, and we discover no sound reason why that statutory method should not be upheld. It provides for an appraisement of damages by the Board of Commissioners and for a report to the court which established the district, and where the proceedings are pending, and each property owner is given a hearing after the publication of notice. Two remedies are provided for an aggrieved property owner; first, an appeal to the higher court, and,

next, the right within a certain time to demand a jury for an appraisement of the damages.

The only constitutional provision on the subject is found in section 22, article 2, declaring that "private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." This constitutional provision relates entirely to the right of the property owner to have compensation, and it has nothing to do with the remedy afforded to the injured property owner, and that matter is left entirely to the legislative will. Taking property for public use of this character falls within the State's right of eminent domain, and we have held that that right may be exercised without notice to the property owner or without giving a hearing upon that question. *Sloan* v. *Lawrence County,* 134 Ark. 121. It is, of course, not to be implied from that decision that the right to compensation may be ignored by the Legislature, but where a method is provided for the ascertainment of compensation to be allowed, all constitutional guaranties are complied with, and the right to exact compensation is made effectual. The method of ascertaining compensation prescribed in the act of 1905, *supra,* was somewhat similar in principle to the method prescribed in the statute now under consideration, and we upheld its validity in the case of *Young, Admr.,* v. *Red Fork Levee District, supra.*

The drainage statute provides, as has already been shown, that where the commissioners make no return of damages to any particular tract of land "it shall be deemed a finding by them that no damage will be sustained." This provision relates merely to the form of the report of the commissioners, and is, we think, entirely within the legislative power. The requirement is that where damages are found by the commissioners they shall report the amount, but where no damages are found, or where the benefits exceed the damages and the assessment to be levied, no finding need to be reported as to that particular tract,

We are unable to discover any violation of the rights of the property owners in prescribing this form of report, for when read in the light of the statute, any property owner in examining the report of the commissioners will know that there has been a finding against him as to damages to his property where no amount is specified. The provision for an appeal or for an appearance and demand for a jury amply protects the rights of property owners and constitutes due process of law. The whole proceeding is one *in rem,* and when the notices provided for in the statute are properly given, all owners of property thereby becomes parties to the proceeding and have the right of appeal whether they actually appear at the hearing or not. *Foster* v. *Bayou Meto Drainage District,* 132 Ark. 141.

The principle involved in this case has been declared in the decision of this court in *Young, Admr.,* v. *Red Fork Levee District, supra,* in construing the act of 1905. That statute provided that levee and drainage districts, after selecting the route for the improvement, should, upon failure to obtain the consent of the owners of the property to be taken, present their petition to the judge of circuit court who should appoint a board of appraisers composed of three land owners, and that the appraisement of said board when approved by the court should become final unless the interested land owners appeared and demanded a trial. In passing on that statute the court said: ''We discover no reason for declaring this legislative provision invalid. It is contended that its provisions wrongfully deprive the owner of a trial by jury for the ascertainment of damages, but the answer is that the act itself provides that there shall be a jury trial in the event the owner appears within the time given and demands such trial. There is no express provision of our Constitution requiring the assessment of damages by a jury in this class of proceedings. The constitutional guaranty of trial by jury in condemnation proceedings relates only to condemnations by private corporations. Article 12, section 9, Constitution of 1874. In other words, the

statute is valid in all respects material to this controversy because it gives the land owner a day in court by personal service if he resides in the county and is known, and by publication where it is a proceeding *in rem;* and also he is given a day in court by proper service of summons or warning order in the event of uncertainty as to ownership and the payment of the money to the clerk of the chancery court. Every constitutional requirement is therefore covered in the statute.''

The act under consideration in that case provided for actual service of notice on land owners residing in the county, whereas the present statute provides only for published notice, but that difference is not material, as it is a proceeding *in rem,* and constructive service is as effectual as actual notice for the purpose of bringing into court the interested parties. *Foster* v. *Bayou Meto Drainage District, supra.* The same principle has been announced by this court in decisions with respect to condemnation proceedings in laying out public roads under orders of county courts. After publication of notice of the presentation of 'petition for laying out a road, the county court appoints viewers to select the route and assess the damages, giving notice to interested land owners, who have an opportunity to appear in court and object to the confirmation of the appraisement made by the viewers, or to appeal from an adverse ruling of the court. Our decisions on that subject have been that the original notice confers jurisdiction upon the county court of the subject-matter and that the property owners are bound by the subsequent proceedings, whether they appear in court or not, even though there is a failure to give notice of the appraisement, that being treated as a mere irregularity which does not defeat the validity of the proceedings. *Howard* v. *State,* 47 Ark. 431; *Lonoke County* v. *CarlLee,* 98 Ark. 345; *Road Improvement District* v. *Winkler,* 102 Ark. 553.

The statute now under consideration confers jurisdiction on the circuit court where the lands are situated in several counties, and we have upheld the statute in

that respect. *Grassy Slough Drainage District* v. *National Box Company,* 111 Ark. 149.

Decisions of courts of other States have been cited which might appear to be in conflict with the views we have expressed, but in those States there are constitutional provisions which require payment of compensation before the taking or damage of property for public use, but we have no such provision in our Constitution. Section 9, Article XII, of the Constitution which prohibits the appropriation of property to the use of any corporation until compensation "shall be first made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction" does not apply to anything except condemnation proceedings by private corporations. *Cribbs* v. *Benedict,* 64 Ark. 555; *Ritter* v. *Drainage District,* 78 Ark. 580.

We are, therefore, of the opinion that the statute under consideration is valid, and that appellant has had his day in court for the ascertainment of damages for the taking of his property, and that he is barred from prosecuting the present action. The circuit court was correct in so deciding, and the judgment is affirmed.

HART, J., (dissenting). Mr. Justice Wood and the writer, after giving this case that careful consideration which its importance demands, have reached the conclusion that the act is unconstitutional and void and therefore feel impelled to dissent. We are not unmindful that it is the duty of courts to hold an act constitutional where from the language used by the Legislature it is susceptible of that construction; but with equal propriety it may be said that the framers of the act must listen to the voice of the Constitution in passing it.

Article 2, section 22, of our Constitution reads as follows:

"The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

The parts of the statute which contravene this section of the Constitution are in section 7 and section 8 of the act. See Acts of 1909, p. 829. The part of section 7 referred to is as follows:

"The commissioners shall also assess all damages that will accrue to any land owner by reason of the proposed improvement, including all injury to lands taken or damaged; and where they return no such assessment of damages as to any tract of land, it shall be deemed a finding by them that no damage will be sustained."

Section 8 is as follows:

"Any property owner may accept the assessment of damages in his favor made by the commissioners; or acquiesce in their failure to assess damages in his favor, and shall be construed to have done so unless he gives to said commissioners within thirty days after the assessment is filed, notice in writing that he demands an assessment of his damages by a jury; in which event the commissioners shall institute in the circuit court of the proper county an action to condemn the lands that must be taken or damaged in the making of such improvement; which action shall be in accordance with the proceedings for condemnation of rights-of-way by railroad, telegraph and telephone companies, with the same right of paying into court a sum to be fixed by the circuit court or judge, and proceeding with the work before assessment by the jury. If there is more than one claimant to the lands, all claimants may be made parties defendant in such suit, and the fund paid into court, leaving the claimant to contest in that action their respective rights to the fund."

The determination of the question of just compensation is in its nature judicial. We think it is readily apparent from the part of section 7 of the act just quoted that it is in conflict with the section of the Constitution quoted above. It is true it provides that the com-

missioners shall assess all damages which will accrue to the land owner by reason of the proposed improvement including all the injuries to the land taken or damaged, still the concluding part of the sentence offends the Constitution. It provides that where the commissioners return no such assessment of damages as to any tract of land it shall be deemed a finding by them that no damage will be sustained. This is legislative dictation and contrary to the Constitution. The vice of the section can best be shown by illustration. For instance, suppose the commissioners for reasons of their own, or through negligence or mistake, fail to estimate the damages to a tract of land or a part thereof appropriated for the right-of-way of the drainage ditch, they would naturally make no return of any assessment of damages as to that tract of land. Under the language of the act their failure to return such assessment of damages is deemed a finding by them that no damage will be sustained. So without any action at all on the part of the commissioners, the owner has his lands taken away from him. This cannot be done. The effect of it would be to take the owner's land away from him by a mere presumption that the commissioners acted, when in fact they might or might not have done so. The question of whether they did act is one of fact and the right of property would not be before and higher than any constitutional sanction if it could be taken away by a mere presumption that the board had acted, when in fact it had not done so. The section provides that private property shall not be taken, appropriated, or damaged for public use without just compensation therefor. Under that part of the statute in question it is readily apparent that this could be done. For whether the commissioners acted or did not act in making an assessment of damages, the statute provides that their failure to act shall be deemed a finding that no damages shall be sustained. Thus the owner's property might be taken without compensation being made him by the mere failure of the commissioners to act. We cannot subscribe to any such doctrine.

We also think that section 8 of the act offends in the same way.   It provides that the land owner shall be construed to have acquiesced in the failure of the commissioners to assess damages to his land when it is taken or damaged by the drainage district if he fails to give notice in writing within 30 days that he demands an assessment of his damages by a jury.   We do not think that the framers of the Constitution meant that the landowner's property could be taken away from him by mere nonaction on his part.

We therefore respectfully dissent.

WOOD, J., concurs in the dissent.