The Honorable Randy Laverty State Representative P.O. Box 303 Jasper, Arkansas 72641
Dear Representative Laverty:
This is in response to your request for an opinion on two follow-up questions arising in light of the conclusions reached in Op. Att'y Gen.94-400, which concluded generally that National Park Service regulations, to the extent of any conflict, would take precedence over state or county law with regard to the regulation of traffic on county roads within the "Buffalo National River." Opinion No. 94-400 cited applicable precedent concluding that the fact that the county owns the roads is irrelevant; the federal government may still regulate the use of the county roads despite its lack of a proprietary interest. See FreeEnterprise Canoe Renters Ass'n. V. Watt, 711 F.2d 852 (8th Cir. 1983).
Your two questions relating to this topic are as follows:
 1. Does the federal government automatically obtain county road easements when it purchases land for the Buffalo River National Park without going through the county court? Please answer this question in the light of the following:
a. Arkansas Code Annotated § 14-298-125;
b. Article 12, § 9 Constitution, State of Arkansas;
 c. Public Law 92-237 dated March 1, 1972, paying particular attention to Section 2(a).
 2. If it is determined that these roads are park service roads, can county road funds be used to maintain these roads?
 Also does it make any difference that these roads are used by the U.S. Postal Service as regular mail routes and by the local public school districts as bus routes?
It is my opinion that the answer to your first question is "no," the federal government does not "automatically" obtain county road easements when it purchases land for the Buffalo National River. There is no federal statute requiring this result. It appears therefore, that the question of the acquisition of an "easement" would be a matter of contract between the parties. As noted in Opinion 94-400, however, the federal government does obtain the right to regulate traffic on county roads within the park area despite the lack of any "easement" or ownership interest in the roads.
In my opinion the three provisions of law you have cited in connection with your first question are irrelevant to the question of which entity (the county or the federal government), has authority to regulate traffic on county roads. The first and third provisions are relevant to the grant of an ownership interest in the roads, but it is my understanding that no such ownership interest has been granted on any of the roads in question, nor has the federal government sought an ownership interest in any of the roads. It does not need such an ownership interest in order to regulate traffic on the roads. The first provision you have cited, section 14-298-125 of the Arkansas Code, provides in pertinent part that:
 (a) The county court of each county . . . is authorized to grant the United States of America the right to close, inundate, destroy, relocate, alter, or appropriate any county highway in the county in connection with the construction . . . of any . . . public project being constructed . . . by the United States. . . .
 (b) The county court of each county . . . shall have power to execute any and all contracts, deeds, [and] easements . . . as may be required . . . to . . . exercise . . . the powers granted in this section.
This statute authorizes the county court to grant easements to the federal government for federal projects. It does not govern the extent to which, under federal law, the United States government may obtain such easements, nor can it in anyway restrict the ability of the United States Congress or regulatory bodies acting pursuant to acts of congress to regulate national park areas.
The second provision of law cited in connection with your first question is Arkansas Constitution, art. 12, § 9, which provides as follows:
 No property, nor right or way, shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction as shall be prescribed by law.
This provision appears in the chapter of the constitution governing municipal and private corporations. It has been held that this provision applies only to takings by private corporations. See Dickerson v.Tri-County Drainage Distr., 138 Ark. 471, 212 S.W. 334 (1919). This provision has no applicability to the issues presented. It should be noted, however, that Amendment 5 to the United States Constitution, which provides in relevant part that "nor shall private property be taken for public use, without just compensation" has been held to apply to the taking of a county-owned highway by the United States. United States v.Certain Lands Located in Raritan and Woodbridge Tps., Middlesex County,
N.J., 246 F.2d 823 (3rd Cir. 1957), and Town of Bedford v. U.S.,23 F.2d 453 (1st Cir. 1927). Whether a "taking" has actually occurred, however, is a question of fact, but it has been held that when the owner of real property has been called upon to sacrifice all economically beneficial use of the property he has suffered a "taking." Lucas v. SouthCarolina Coastal Council, 502 U.S. 966 (1991). It has been held that in order to show a "taking" a property owner must show either that the regulation does not advance a legitimate state interest or that it denies the property owner all economically viable use of his or her land. Carpenter v. Tahoe Regional Planning Agency, 804 F.Supp. 1316
(D. Nev. 1992).
The third provision of law you cite in connection with your first question is P.L. 92-237, section 2(a), which governs the Buffalo National River specifically. This law is codified at16 U.S.C. § 460m-9 and in pertinent part provides that:
 Within the boundaries of the Buffalo National River, the Secretary may acquire lands and waters or interests therein by donation, purchase or exchange, except that lands owned by the State or a political subdivision thereof may be acquired only by donation. . . . [Emphasis added.]
This provision requires that land acquisition by the Secretary of the Interior for the Buffalo National River from states or political subdivisions be by donation. If the United States acquires an ownership interest in any State, county or city property in the park, therefore, the state, county or city must agree to donate the property. Again, however, it is my understanding that no ownership interest or easement has been acquired by the federal government, and again, I must note that the federal government does not need such an interest to enforce regulations or require permits for traffic on county roads within the park. See Op. Att'y Gen. 94-400.
Your second question inquires whether, if it is determined that the roads at issue are park service roads, county road funds can be used to maintain them. It is my understanding, again, that these roads are not "park service roads," but in the event they are determined to be "park service roads," it is my opinion that there is no prohibition against the county expending county road funds to maintain them. It should be noted that Amendment 61 to the Arkansas Constitution, governing the three mill road tax, limits the use of the funds to "constructing and repairingpublic roads . . . within the county. . . ." Emphasis added. The language does not limit expenditure of the funds to repairing "county" roads within the county, but uses the term "public roads." It is therefore my opinion that this provision does not prohibit the expenditure of county road tax dollars on "park service roads." See also Op. Att'y Gen. No.95-046, n. 1 (noting that Arkansas case law authorizes counties to expend road tax moneys for repairing roads within city limits). In addition, in my opinion such an expenditure would survive a challenge under both Arkansas Constitution, art. 16, § 13 (the illegal exaction provision) and art. 12, § 5 (prohibiting counties from appropriating money to any corporation, association, institution, or individual). In light of this conclusion, it does not make any difference whether the roads are used as mail routes or school routes.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh