BOARD OF LEVEE COMMISSIONERS FOR THE YAZOO-MISSIS-
SIPPI DELTA *v.* H. S. HARKLEROADS.

1. APPEAL. *From chancery court. Under act creating Yazoo-Mississippi Delta Levee Board.*

   The third section of the act of February 28, 1884, entitled "An act to incorporate the Board of Levee Commissioners for the Yazoo-Mississippi Delta and for other purposes," authorizes such board to have land condemned for levee purposes upon "appraisement" by three commissioners appointed by the clerk of the chancery court, and gives either party "aggrieved at such appraisement" the right to appeal to that court, and although no special provision is made for an appeal in such case to the supreme court, it is manifest that the legislature, by granting an appeal to the chancery court, intended to confer the right of appeal to this court under the general law, as in other cases in the chancery court.

2. EMINENT DOMAIN. *Under act creating Yazoo-Mississippi Delta Levee Board. Rule of compensation to landowner.*

   Where land "is taken or to be taken" for levee purposes under the act of February 28, 1884, creating the Yazoo-Mississippi Delta Levee Board, the measure of compensation to the owner for "the value of the property and the damages sustained" (as provided in that act) is (as expressed in *Isom* v. *Miss. Cen. R. R. Co.*, 7 Geo. 312), "the value of the property in market at the time, and the injury then necessarily known to result to the owner as the necessary and immediate consequence of the public use of his property without reference to the uncertain or remote benefits or disadvantages that may or may not occur in the future."

3. SAME. *Land taken for levee purposes. Compensation to owner. Case in judgment.*

   The owner of land taken for such purposes is entitled to its fair market value, considered as a part of the whole tract, and to damages resulting from the intersection of his premises by the levee, and for the depreciation of a part of his tillable land so cut off by the levee as to be unfit or inconvenient for cultivation, and for the filling of his natural and artificial drains; but he is not entitled to damages because a part of his land is left unprotected by the levee, nor to damages for the closing by the levee of the natural outlet of a lake into which the drainage from his land has previously flowed, unless the natural and necessary result be to cause the lake to overflow his land to a definite and certainly ascertained extent by reason of its incapacity to receive the surface water flowing into it, and which, but for the levee, would be discharged through its natural outlet, nor to damages to that part of his land unprotected by the levee which may possibly result from raising the "flood line" of the waters of the river by the erection of the levee.

APPEAL from the Chancery Court of De Soto County.

HON. J. G. HALL, Chancellor.

Under "An act to incorporate the Board of Levee Commissioners for the Yazoo-Mississippi Delta, and for other purposes" (Acts of 1884, 140), T. W. White, the president of the board thus created, and H. S. Harkleroads, the owner of a plantation lying within such levee district, and embracing about three sections of land, jointly applied to the Clerk of the Chancery Court of De Soto County, on the 12th of November, 1884, for the appointment of three commissioners, as provided in that act, to determine the amount of compensation which should be paid by the board of levee commissioners to Harkleroads for a strip of land through his plantation, " taken for the use of said board for the purpose of locating, constructing, and maintaining its line of levees," the president of the board and the owner of the land being unable to agree " as to the value of the premises taken." The commissioners were appointed, and assessed Harkleroads' damages at sixteen hundred dollars. From this award both parties appealed to the chancery court.

In the chancery court a jury was summoned and the case submitted to them for trial. The facts established by the evidence are sufficiently indicated in the opinion of the court, which also contains a statement of the nature of certain testimony admitted in evidence by the court below over the objection of the levee board.

The court gave for Harkleroads the following, among other instructions :

" 2. The jury is instructed by the court that H. S. Harkleroads is entitled to recover of the levee board commissioners the value of the land appropriated by said board for the construction of the levees, and also to recover in addition to this such sum as the evidence shows Harkleroads to have been damaged by the construction of the levees in the place where they were built upon his land. By the value of the land appropriated is meant its cash value in the market at the time of its appropriation, not what said land would have brought at a forced sale, but what Harkleroads could have obtained for it, in case he had wished to sell, from a pur-

chaser having the means to buy and willing to pay its true, full, cash value at that time. Should you be satisfied from the evidence that Harkleroads suffered damage from the construction of the levee beyond the value of the land appropriated, it will become your duty to consider such damage and allow him therefor such sum as the evidence shows will indemnify him for the injury sustained, provided such damage is immediate and direct or such as it must have been known would necessarily result and was capable of definite ascertainment. The true value of the land taken, ascertained by the rules above laid down, and the actual damage sustained are the true standard by which you must measure the compensation to which he is entitled.

" 3. If the evidence satisfies the jury that by reason of the construction of the levee any of the lands of Harkleroads lying adjacent to said levee were, as a necessary result of the construction of said levee, diminished in value or rendered less useful or less profitable to Harkleroads, the jury will assess in his favor such damage as the evidence shows will compensate him for and indemnify him against such loss, growing out of and arising from the construction of the levee adjacent to said lands, provided such damages were the direct and immediate result or such as it was necessarily known must result from such taking and were capable of definite ascertainment."

The jury assessed Harkleroads' damages at one thousand eight hundred and forty-seven dollars and seventy-one cents, and from the decree of the court on such verdict the levee board, after making a motion for a new trial, which was overruled, appealed to this court.

*Powell & Buchanan* and *J. B. Morgan*, for the appellant.

1. Although no appeal from the verdict of the jury and the decree of the Chancellor is specially provided for in the act creating the levee board, we contend that this very silence on the part of the legislature is indicative that it was the legislative will that such cases as this should be appealable under the general statute providing for appeals. See Code 1880, § 2309 ; see also *Taylor* v. *Marion County*, 51 Miss. 734 ; *Crump* v. *Supervisors*, 52 Miss. 108 ; *Supervisors* v. *Patrick*, 54 Miss. 240.

2. Appellee's second and third instructions are erroneous and calculated to mislead the jury. They, in effect, instruct the jury to consider damages that might result from the construction of the levee. It is insisted that the true rule of law in cases of this kind holds the jury to a consideration of damages resulting from the taking and the appropriation to the use of the public alone, and that any question of damages that might in the future result from the construction of the levee could alone be considered after the levee had been constructed and the damages had actually resulted from such construction. We think a clear, well-defined distinction should be presented to the jury in cases of this kind between that class of damages done to the freehold by the taking and appropriation at the time of the taking and that class of damages resulting from public works constructed upon the freehold taken. The charges, as given, blend the two causes of damage, and are thus misleading. See *Isom* v. *Railroad Co.*, 7 Geo. 312.

Appellants insist that the true rule for the guidance of the jury was that the measure of damages sustained by appellee was the difference between the value of appellee's land before and after the taking. The court refused to recognize this principle and would not permit it to enter into any instruction asked by appellants. This refusal was error. See *Balfour* v. *L., N. O. & T. R. R. Co.*, *ante*, 508.

The court, acting under this erroneous impression of the law, admitted a mass of incompetent testimony, as will be fully shown by the record, under the protest and objection of appellants. The record clearly shows that the jury were influenced by the introduction of such evidence.

*J. B. Morgan* and *A. S. Buchanan*, of counsel for the appellant, argued the case orally.

*Malone & Watson*, for the appellee.

1. The right to appeal is not guaranteed to litigants in all cases. Nothing is more clearly within the legislative power over matters pertaining to public policy than the question, in what cases and to what courts shall a party be entitled to an appeal or a writ of error? In such cases the question to be settled is, whether

or not it would best promote the purposes of justice and the peace and quiet of the community to allow a matter once or twice regularly adjudicated in the courts to be further litigated in other courts? And this question depends, not upon matter of legal right, but upon considerations of public policy.   *Dismukes* v. *Stokes*, 41 Miss. 431.

By the act creating the levee board a specific mode of proceeding (for condemnation) is prescribed and a special tribunal established for the purpose of supervising the exercise of the right of eminent domain, and this cannot be reviewed by another court on appeal. *Western R. R. Co.* v. *Patterson*, 37 Md. 135; *Wilmington R. R. Co.* v. *Condon*, 8 Gill and Johnson 448; *Smith* v. *Taylor*, 34 Tex. 606.

2. The true rule of compensation for the landowner in such case as this is laid down in *Brown* v. *Beatty*, 5 George 242.

He is entitled to the cash value of the land when the assessment was made, and also to be indemnified for the damage to his adjacent land consequent upon the location of the road.   The cash value and the actual damage are the true standard by which to determine the compensation to which he is entitled.

If the court should adhere to the rule laid down in *Brown* v. *Beatty* and the cases following it, there can be no doubt about the correctness of the action of the court in admitting the testimony for defendant and giving the instructions asked.

" When less than the whole is taken there is to be considered how much the portion not taken is [increased] or diminished [under the Mississippi rule it should read diminished] in value in consequence of the appropriation.   The valuation of the strip taken is of its value in relation to the whole, not its value as a strip alone. To arrive at this the jury may consider the damages by reason of the lot or building being severed or disfigured on account of the taking of the strip, *and the use of it and* the effect of the proposed use of the strip upon the remainder of the lot."   Mills on Eminent Domain, § 166.

When the corporation having the right to appropriate public property will, in constructing their improvements, stop up drains or ditches, or interfere with the flow of water so as to injure the

landowner, this should be taken into consideration by the jury in assessing damages. *Waterman* v. *Conn., etc., R. R. Co.,* 30 Vt. 610 ; *Raleigh and Augusta R. R.* v. *Wicke,* 47 N. C. 220 ; *Sleight* v. *Kingston,* 18 N. Y. (Sup. Ct.) 594; *Mellen* v. *Western R. R. Co.,* 4 Gray 301; *Lathrop* v. *Grosvenor,* 10 Gray 52 ; *Woods* v. *Manufacturing Co.,* 4 N. H. 527 ; *Terre Haute R. R. Co.* v. *McKinly,* 33 Ind. 275.

*H. C. Watson,* of counsel for the appellee, argued the case orally.

COOPER, C. J., delivered the opinion of the court.

This cause is properly here by appeal. The legislature, by granting an appeal from the decision of the commissioners to the chancery court, from which court appeals may be taken from all final decrees, indicated, as we think, an intention to confer the right of appeal to the losing party, just as it is given to other litigants in that court.

By the third section of the act creating the board of levee commissioners power is conferred upon it to exercise the right of eminent domain for the acquisition of such lands as may be necessary for the construction of the system of levees provided for, but compensation is to be made to the owner to the extent of the " value of the property [taken] and the damages sustained." It is unnecessary to consider whether the State might have taken the land, paying only the value thereof, without regard to the injury which would result from the uses to which it was devoted, since it is manifest that it proposed to pay both the value of the property taken and the damages.

The measure by which damages are to be determined in cases of this character has been declared in several decisions of this court. We can add nothing to the rule as given in the case of *Isom* v. *The Mississippi Central Railroad Co.,* 7 Geo. 312, that " the value of the property in market at the time, and the injury then necessarily known to result to the owner, as the necessary and immediate consequence of the public use of his property, without reference to the uncertain or remote benefits or disadvantages that may or may not occur in the future," is the measure of compensation.

Applying this rule to the facts of this case, we think the appellee is entitled to have the fair market value of the land actually taken, considered as a part of the whole tract, and the damages resulting to his curtilage by reason of the fact that it was intersected by the levee; and the damages resulting from the depreciation in value of the small body of land situated between the levee and the bayou in rear thereof, and cut into such shape as to be unfit or inconvenient for cultivation ; and the damages suffered by the filling of his natural and artificial drains, this to be limited by the costs of opening others answering to those closed if that be practicable ; and that he is not entitled to any damages arising from the fact that a part of his farm is not protected by the line of levees as located; nor to damages arising from the fact that Beaver Lake, into which the drainage of his farm has flowed, has been cut off by the levees from its natural outlet, unless it be shown that the natural and necessary result will be to cause this lake to overflow his farm to a definite and certainly ascertained extent by reason of its incapacity to receive the surface water flowing into it and which, but for the levee, would be discharged through its natural channel ; nor to damages which in the opinion of witnesses will result from the raising of the "flood line" of the waters of the river, which result, in their opinion, will follow the erection of the system of levees provided for by the act.

The overflowing water of the Mississippi River is the enemy of the public, and the State in assuming to deal with the danger arising therefrom has not provided for compensating the owners of lands lying along the borders of the river for any injury which may incidentally and possibly arise from confining the waters within the limits fixed by the line of levees.

The testimony of the witnesses who stated that the effect of the levees would be to raise the flood line should have been excluded. The evidence of the appellee that the lands between the levee and the river had been reduced in value seventy-five per cent. should also have been excluded, since a material factor in producing this deterioration was the fact that these lands were or would be unprotected by the levees, and this protection the public is under no obli-

gation to supply. The second and third instructions for the appellee are erroneous, because as written they are broad enough to include the idea that the owner is entitled to damages arising from the fact that a large portion of the farm is deprived of the protection of the levee erected *where it is.*

*The decree is reversed and the cause remanded to the Chancery Court of De Soto County.*