CITY OIL WORKS *v.* HELENA IMPROVEMENT DISTRICT No. 1.

Opinion delivered June 30, 1921.

1. EMINENT DOMAIN—DAMAGES TO INDUSTRIAL TRACK.—In an action to condemn a right-of-way for a levee, an instruction limiting the damages to be recovered to the value of the land actually taken in the construction of the levee and denying defendant's right to recover on account of the levee being built across an industrial track to its oil mill was erroneous where it was not shown that the practical use of the oil mill had been destroyed on account of its being left outside of the levee by construction of the new levee.

2. EMINENT DOMAIN—LIABILITY OF LEVEE DISTRICT FOR FAILURE TO INCLUDE LAND.—A landowner whose property is left outside of a levee is not entitled to damages because of the failure to pro-

tect his land, or because the levee as constructed may prevent water from flowing off his land as it otherwise would or may deepen the water in an overflow of the land between the embankment and the river.

3. EMINENT DOMAIN—LIABILITY FOR DAMAGES TO PROPERTY OUTSIDE LEVEE.—Although a levee district is not liable for damages inflicted by the river upon land situated outside of the levee, it does not follow that it should not be liable for damages produced by independent causes other than being outside of the levee, if these elements of damage are proper.

4. EMINENT DOMAIN—DAMAGES TO INDUSTRIAL TRACK.—Where the usefulness of defendant's oil mill was not wholly destroyed by being left outside of a levee, it was entitled to recover damages for the building of a levee across its industrial tracks, rendering them useless.

5. EMINENT DOMAIN—DAMAGES—EVIDENCE.—In a proceeding to condemn property for levee purposes, evidence *held* not to show beyond dispute that the defendant's oil mill was rendered valueless because the levee was constructed so as to leave it on the outside.

6. EMINENT DOMAIN—DAMAGES.—In a proceeding to condemn land for levee purposes, where the evidence showed that the construction of the levee across defendant's industrial track prevented defendant from carrying freight to and from the oil mill over the industrial track, the damage so caused was not due to the oil mill being left outside of the levee, but was caused by the levee itself, and constituted a damage to the remainder of defendant's property for which the defendant should be compensated.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

STATEMENT OF FACTS.

This action was brought in the circuit court by Helena Improvement District No. 1 against the City Oil Works to condemn a right-of-way over property belonging to the defendant in Helena, Ark., for the construction of a levee. Subsequent purchasers of the property from this defendant were also made defendants.

They answered, setting up damages by reason of the actual taking of a part of the land and the injury to the remainder.

The board of commissioners for the levee district and the engineers were witnesses for it at the trial of the

condemnation proceedings. According to their testimony, the levee was first constructed in front of the oil mill of the defendants, and the levee protected the mill from the high waters of the Mississippi River. There was a subsidence in the levee. By this is meant that the levee sank down, and the cause of it was the soft foundation. The subsidence was in that part of the levee in front of the mill. The commissioners of the levee district expended about $20,000 in trying to repair and maintain the levee in front of the oil mill. They were unable to do so, and, after the levee had sunk down again and a part of it had caved into the river, it was deemed advisable to construct the levee behind the oil mill. In doing this, they used about six-tenths of an acre of the land on which the oil mill was situated and built the levee across an industrial railroad track which had been extended from the main track of the railroad company to the oil mill for the purpose of carrying freight to and from the mill. This left the oil mill in front of a levee sixty feet high and without means of carrying its freight from the mill to the tracks of the railroad company. The value of the land upon which the mill was situated was $1,000 per acre.

According to the testimony of G. W. Willey, the president and manager of the oil mill, his company was engaged in crushing cotton seed and in the cotton seed oil business. It is impractical to operate an oil mill of that size without an industrial track. After the levee was constructed behind the oil mill, it destroyed the industrial track so that the company was unable to move its freight to and from the mill to the railroad. It was impractical to operate the mill after the levee had been constructed across its industrial track, so that cars could not be brought from the railroad track to the mill for the purpose of loading and unloading. The value of the plant before the levee was constructed behind it was $70,000. After that its value was practically destroyed, and it was necessary to sell the machinery piece by piece.

He further stated that this would have been prevented if the old levee had been permitted to remain. According to his testimony, also, the construction of the new levee made it impossible to operate the plant. The reason given was that the levee occupied that portion of the ground that had been formerly used for trackage purposes, and the construction of the levee, which was sixty feet high across the industrial track leading into its mill, damaged the property the whole value of the mill. The reason that the taking deprived them from operating the mill was because it was impossible to maintain thereafter a railroad connection. In short, the taking of the particular piece of land and the building of the levee across the industrial track practically destroyed the value of the mill, and made it impracticable to operate it.

No subsidence has occurred in the old levee in front of the mill since the construction of the new levee behind it. Accretions are forming in the river in front of the mill and willow trees are growing up there.

The jury returned a verdict for the plaintiff and assessed the value of the land taken by it in the sum of $60.

From the judgment rendered, the defendants have duly prosecuted an appeal to this court.

*Moore & Vineyard* and *W. G. Dinning,* for appellants.

1. The court erred in overruling appellants' exceptions to the competency of certain jurors. Residents and taxpayers of a municipality are disqualified as jurors in actions affecting the interests of the municipality. 60 Ark. 221; 119 Ind. 368; 5 L. R. A. 253; 81 Kan. 616; 28 L. R. A. (N. S.) 156; 115 La. 757; 5 Ann. Cases 920; 57 Ore. 236; Ann. Cases 1913-A, 117. The jurors objected to were not qualified jurors in this case.

2. The improvement district is liable to appellants for the damages caused to their property as a whole by

the building of the levee across a portion of their lands. Private property can not be taken or damaged for public use without just compensation therefor.  Const., art. 2, § 22; *Id.*, art. 5, § 32, and art. 12, § 9.   This court has settled the law as to the elements of damage arising in favor of landowners by reason of eminent domain proceedings.   The owner is entitled to recover all damages caused by increased difficulty of ingress and egress caused by the construction of a railroad.   41 Ark. 431.   The manner in which a railroad cuts up the land, the amount and location of the land taken, the inconvenience to the owner in passing from one part of his land to another, the absence of proper crossings and the overflow of the land, are proper elements of damage.   44 Ark. 360; 51 *Id.* 330.  See, also, 39 Ark. 167.  The measure of damages for taking the land for right-of-way is the market value of the land taken and the damage to the remaining land from the building of the road across it and from floods and overflows caused by its construction.   78 Ark. 83. See, also, 88 Ark. 129; 94 *Id.* 206; 5 A. L. R. 723, 727. The court below ignored the well-known rule of these cases, and prejudicial error resulted to appellant.   The measure of damages and amount of recovery is not limited by the provisions of C. & M. Digest, § 3940.   The provisions of said section, in so far as they attempt to deprive the owners of property in this State of the rights guaranteed by our Constitution, are void.   The owner is entitled to full compensation for all the damages done by taking his land.   The appellants attempted to have all the issues submitted to the jury by asking a number of instructions, but the court erroneously refused to give them.   The error was prejudicial.

*P. R. Andrews* and *J. G. Burke,* for appellee.

1.   The overruling of exceptions to the competency of certain jurors on the ground that they were owners of land in the district has never been passed on by this court, but see 43 Ark. 324.  See, also, 94 Ark. 563.   Under the rulings of this court the jurors were not disqualified.

2.   As to the measure of damages and recovery is limited by C. & M. Digest, § 3940.

3.   There was no error in the instructions given or refused.   The principles were settled in 95 Ark. 345-51. That case is conclusive of this.   See, also, 230 U. S. 34. There was no error in refusing to submit the issues raised by the instructions to a jury.

Hart, J. (after stating the facts).   There is no conflict in the testimony that it was necessary to construct the new levee in order to protect the lands within the district from the overflow of the Mississippi River.   It is conceded that the commissioners acted in good faith in locating and constructing the new levee, and that this was within the power of the commissioners under the act creating the improvement district.

The evidence shows that the levee, as originally constructed, was between the oil mill of the defendants and the Mississippi River.   So it may be said that the oil mill was on the inside of the levee.   By the construction of the new levee the oil mill was placed outside of the levee.   In other words, the oil mill of the defendants is between the new levee and the Mississippi River.   There was an industrial track extending from the oil mill of the defendants westward to the main line of a railroad. The levee was constructed across the industrial track on a part of the land of the oil mill.   The levee as constructed was sixty feet high and destroyed entirely the use of the industrial track of the oil mill.   So that communication from the mill with the railroad by cars operating on the industrial track was entirely cut off.

In instructing the jury at the request of the plaintiff, and in refusing to give instructions asked by the defendants, the court limited the damages to be recovered to the value of the land actually taken in the construction of the levee, and denied the defendants the right to recover on account of the levee being built across the industrial track running from the main line of the railroad to the oil mill of the defendants.   This was error.   The

ruling on this point would have been correct if the un-contradicted evidence had shown that the practical use of the oil mill had been destroyed on account of its being outside of the levee by the construction of the new levee.

In *McCoy* v. *Bd. of Dir. of Plum Bayou Levee Dist.*, 95 Ark. 345, the court held that a levee district may right-fully build its levee across depressions, swales and low places so as to prevent the escape of flood water from a river into surrounding low lands sought to be protected, though it has the effect of raising the water higher on lands between the levee and river, without becoming lia-ble to the owner of such interevening lands so damaged.

The court further held that a levee district, which builds a levee so as to protect lands from overflow of the waters of a stream at flood time, will not, under article 2, § 22, of the Constitution of 1874, providing that private property shall not be "taken, appropriated or damaged for public use without just compensation therefor," be-come liable for injuries to land lying between the levee and the river resulting from the flood water being raised higher between the levee and the river than before the levee was constructed.

In *Jackson* v. *United States*, 230 U. S., p. 1, and *Hughes* v. *United States*, 230 U. S., p. 24, the court held that the United States is not responsible for damages by overflow or for failure to construct additional levees along the Mississippi River so as to afford increased protection from increased overflow caused by the levees that were constructed by State and Federal authority at other points; nor do such damages amount to taking the land overflowed for public use within the meaning of the Fifth Amendment.

Under the rule announced in those cases, the land-owner is not entitled to damages because of the failure to so construct the levee as to protect his land from the waters of the Mississippi, or because the levee as con-structed may prevent such water from flowing off as it otherwise would, or it may deepen the water in an over-

flow on the land between the embankment and the river. The intention of the Legislature was to protect the lands in the improvement district against the waters from the Mississippi River by constructing a levee for that purpose, and, if it was necessary to construct the levee so as to leave property between it and the river, this would in the very nature of things be unavoidable. Hence it has been held that the landowner must submit to the consequent loss resulting to him as his misfortune to be borne for the general good.

Therefore, the levee district is not liable for damages inflicted upon the land by the Mississippi River. But it does not follow that the levee district should not be liable for damages produced by independent causes other than being outside of the levee, if these elements of damages are proper in other condemnation proceedings. This rule is supported by the decisions of the Supreme Court of the State of Mississippi. A section of the Constitution of that State excludes compensation for damages accruing to land "because it is left outside the levee." The court said that the words used in the Constitution presents the idea of defenselessness against the ravages of the Mississippi River.

In *Duncan* v. *Board of Mississippi Levee Comm'rs* (Miss.), 20 Sou. 839, the court said: "All damages, therefore, which accrue to lands from the ravages of the river because not protected against it by the levee are not to be compensated for. But damages produced by independent causes other than being left outside the levee, if, in their nature, allowable within the rules of law, are still recoverable."

Again in the case of *Richardson* v. *Levee Comm'rs* (Miss.), 9 Sou. 351, the court held that the landowner is not entitled to compensation because the construction of the levee renders the land lying between it and the river practically worthless for agriculture and necessitates the removal of houses to the protected side of the levee, as these are consequential damages. In discussing the ques-

tion the court said: "The landowner is not entitled to damages because of a failure to so place levees as to protect his land from the water of the Mississippi, or because the levee may prevent such water from flowing off as it otherwise would, and may deepen the water in an overflow on the land between the embankment and the river. These are consequences of the situation, and the authorized effort to promote the general good by the construction of levees, and must be borne, because they are unavoidable in the nature of things. The legislative scheme is to protect against water from the Mississippi River by an embankment sufficient for the purpose, and it is to be put where the board intrusted with the execution of the scheme may determine; and the landowner must submit to any inconvenience or disadvantage or loss resulting to him consequentially as his misfortune, to be borne for the general good, to which individual convenience must be subordinated, except where it is otherwise provided. *Commissioners* v. *Harkleroads,* 62 Miss. 807." * * * "That damage caused by the success of the scheme in confining the water of the river is excluded seems clear, and has already been announced. That all other damage which is not remote, and arises directly from the taking of part for levee purposes, resulting to the owner's adjacent land immediately from the constructing of the levee, is to be compensated for, seems as clear as the denial of damage by the river. This is consonant with natural justice, and it may be assumed that it was the legislative purpose to secure to the owner whose land is taken for a levee, indemnity for all damage done him as to the adjacent land he owns, not arising from the accomplishment of the object of the levee, and directly produced by depriving him of so much of his land as is taken from him, and converting it into such a shape as to do harm to his adjacent land. We are not willing to declare a rule more precise than this, for, while there may be a general resemblance in all cases of land near the river, there must be individual differences, and

each must be governed by its own peculiar circumstances, subject to the general rules announced."

It results from these views that if the undisputed evidence had shown that the oil mill of the defendants had been rendered practically useless by the construction of the new levee so as to place the mill outside of the levee, and the mill could not thereafter be operated, the owner could not recover damages for the consequent depreciation in the value of his property or the cost of removing the mill and its machinery to another site where the mill could be operated. The reason is that the damages suffered under such a state of the record would follow as an incident to the construction of the levee so as to leave the property outside of its protection.

The undisputed evidence in the case at bar, however, does not show that the oil mill was rendered valueless as an oil mill because the levee was constructed so as to leave it on the outside of the levee. It is true there is some confusion in the testimony on this point, but, when the evidence is given its strongest probative force in favor of the defendants, it does not appear to us that the oil mill could not be operated at all because the construction of a new levee placed it between the levee and the Mississippi River.

The evidence does show that the oil mill was greatly depreciated in value on this account. According to the testimony of the defendants' witnesses, it was rendered impractical to operate it because the new levee was constructed across the industrial track leading from the railroad to the oil mill, and thus the oil mill company was prevented from carrying cars over the industrial track to and from its mill for the purpose of loading and unloading freight. The evidence for the defendants shows that it was impractical to operate the oil mill without this connection. According to their testimony, however, it was not wholly impractical to operate the oil mill because it was on the outside of the levee. To sum up, the evidence shows that, before the new levee was con-

structed, the oil mill was worth $70,000. Suppose the uncontradicted evidence had shown that the construction of the new levee rendered the property valueless as an oil mill, and that it could not be operated as such on account of the ravages of the waters from the Mississippi River, then the defendants would be only entitled to recover the value of the land taken, and the instructions given by the court would have been correct.

It is fairly inferable, however, from all the evidence, that, while the oil mill property was materially injured by being placed outside of the new levee, still it was practical to operate it, if its industrial track had not been destroyed by the construction of the new levee. This shows that the construction of the new levee across the industrial track was an independent cause which rendered the oil mill property valueless as such and made it impracticable to operate it.

The error in the instructions of the court evidently arose from the fact that it considered the construction of the levee across the industrial track as a mere incident instead of an independent cause producing damages. It is true the only practical way to construct the new levee was to build it across the industrial track. The evidence for the defendants shows that such construction damaged their oil mill property because it prevented the defendants from carrying cars of freight to and from the oil mill over the industrial track. Manifestly this was not damage accruing because of the oil mill property being left outside of the levee, but the damage accrued because of the construction of the levee over the industrial track. In short, this damage was caused, not because the property of the oil mill company was unprotected by the levee, but it was caused by the levee itself. Whether inside or outside of the levee, the damage to the oil mill in this respect was caused by the building of the levee itself, and not by reason of the fact that the oil mill was left outside of the levee. The facilities afforded by the industrial track for the transportation of freight be-

tween the railroad and the oil mill was a valuable property right which belonged to the oil mill company, and its injury by the appropriation of the land on which it was situated and the construction of the levee across it constituted a damage to the remaining property for which the defendants should be compensated. *Chicago, S. F. & C. Ry. Co.* v. *McGrew* (Sup. Ct. of Mo.), 15 S. W. 931, and *N. Y., N. H. & H. R. R. R. Co.* v. *Blacker* (Mass.), 59 N. E. 1020.

In the latter case the court in discussing a similar question said: "The fact that his land was situated on the line of the railroad, and at a level with it, so that spur tracks could be (as they were) built, running onto it, made it valuable for any business which could be economically carried on by having freight delivered to it directly from the cars without the expense of handling and carting. That was an element which in fact gave, or might have given, value to this land, and which could properly be considered in determining what the fair market value of it was."

The holdings in those cases are in accord with our own decisions. In *K. C. So. Ry. Co.* v. *Boles*, 88 Ark. 533, the court held that, although several lots of land sought to be condemned for railway purposes are separated by an alley, they may be treated as parts of a single tract for the purpose of determining the damages if the testimony shows that they are used as a unit.

In *St. L., Ark. & Tex. R. Co.* v. *Anderson*, 39 Ark. 167, the court held that the elements of damages in condemnation proceedings are not alone the market value of the land actually appropriated, but include also the injury to the owner of the remaining land arising from the increased difficulty of communication between the parts of the several tracts, etc.

It follows that the court erred in not submitting to the jury as an element of damages the loss suffered by the defendants on account of the levee having been constructed across the industrial track so as to cut off con-

nection between the oil mill and the railroad by means of the industrial track.

For this error the judgment must be reversed and the cause remanded for a new trial.

SMITH, J., dissents.