SHARP *v.* DRAINAGE DISTRICT No. 7.

Opinion delivered May 5, 1924.

1. PLEADING—ADMISSION BY DEMURRER.—The allegations of a complaint are conferred by a demurrer.

2. PLEADING—PRESUMPTION IN FAVOR OF PLEADING.—Under the Code, every reasonable presumption is to be made in favor of a pleading, and a complaint will not be set aside on demurrer unless it be so fatally defective that, taking all the facts to be admitted, the court can say that they furnish no cause of action.

3. PLEADING—SUFFICIENCY.—A demurrer will not lie to a complaint
if it sufficiently, though imperfectly, states a cause of action;
the remedy in such case being a motion to make more definite
and certain.

4. LEVEE AND DRAINAGE DISTRICTS—UNITY.—Projects for the protec-
tion of river valleys from overflow by building levees and drain-
ing them by constructing ditches may be united in one improve-
ment district.

5. EMINENT DOMAIN—FLOODING LAND BY LEVEE.—A drainage dis-
trict, after building levees on each side of a river, has no right
to build a dam at the outlet of the basin between the lower ends
of the levees, so as to cause flood waters to flow back and destroy
the use of plaintiff's land for agricultural purposes, and for
injuries so caused plaintiff is entitled to compensation.

6. EMINENT DOMAIN—TAKING OF LAND FOR LEVEE.—One whose land
is taken for constructing a levee is entitled to compensation
therefor.

Appeal from Poinsett Circuit Court; *G. E. Keck,*
Judge; reversed.

### STATEMENT OF FACTS.

This is an appeal by A. L. Sharp, a landowner, from
a judgment of the circuit court sustaining a demurrer
to his complaint in a proceeding to recover compensa-
tion for lands taken or damages in constructing a drain-
age ditch. The complaint is as follows:

"Comes the plaintiff, and for his cause of action
alleges that he is the owner of the following lands in
Poinsett County, Arkansas, all of which are located in
the defendant Drainage District No. 7, to-wit: (Descrip-
tion omitted).

"That the defendant is a drainage district, organized
and existing by virtue of an act of the General Assembly
of Arkansas for the year 1917, being act No. 193, and
approved by the Governor on March 9, 1917, the purpose
of said act being to invest the commissioners thereof with
power and authority to do such construction work neces-
sary for the reclamation of the wet and overflowed
lands in said district by a system of ditches, drains and
levees.

"That the defendant commissioners are the duly qualified and acting commissioners of said district.

"Plaintiff further alleges that included in said district is the St. Francis River, from the northern boundary of Poinsett County south to the Cross County line. That said river, from the northern boundary line of said county to a point about nine miles south thereof, traverses a large area of swamp and overflowed land, containing many thousand acres located in a low basin.

"Said river, in and through said basin, while having well-defined banks and a channel, during certain periods of high water overflows a large portion of the lands situated within said basin.

"This condition exists from the northern boundary line of Poinsett County to a point in said county and defendant district about two miles north of Marked Tree, at which point the waters of said river again enter a well-defined channel with sufficient banks to carry the water at all times without much overflow.

"Plaintiff's land herein described is located in said basin, and covered in many places with valuable timber, consisting of oak, gum, hickory, cypress and other species of hardwood usually found growing in wet and overflowed lands. A large portion of said basin and of plaintiff's land is subject, more or less, to periodical overflow, but not to an extent so as to make said lands unfit for cultivation, and that, in a large portion of said basin and of plaintiff's land, crops of cotton, corn, hay and other farm products have been annually grown and harvested.

"Plaintiff further alleges that the defendant district has filed and adopted plans for the construction of an immense levee, fifteen feet or more in height, along both sides of said basin and along and across the outlet thereof, thus converting said basin into an immense reservoir, with said levees as retaining walls, for the purpose of storing the water entering said basin and retarding its flow, and in this way enabling said water to enter a floodway to the south in such a way as to protect

the lands to the south from overflow. By so confining said water defendant has totally destroyed the value of plaintiff's land and all timber thereon.

"Plaintiff further alleges that written notice was served on said defendant board of commissioners, in the time and manner as by law required, within thirty days after said plans for said improvement were filed with the county clerk of Poinsett County, but that defendant refused to bring suit in condemnation, as by law required, and to submit the ascertainment of damages caused to plaintiff's land to a jury, but, on the contrary, has built and completed said levee over and across plaintiff's land, using many acres of plaintiff's land in the construction of said levee and for right-of-way purposes, and throwing into said reservoir about 120 acres of said land, thereby destroying all of said land and timber thereon.

"Plaintiff further alleges the reasonable value of land and timber to be the sum of $50 per acre before the building of said levee; that 25 acres were taken for right-of-way purposes and used in the construction of said levee; that 120 acres are totally destroyed, being in said reservoir, as herein alleged, being a total damage to plaintiff in the sum of $7,250.

"Wherefore plaintiff prays judgment against said defendant district in the sum of $7,250, for costs, and all other proper relief."

The court sustained a demurrer to the complaint, and, the plaintiff electing to stand upon his demurrer, it was adjudged that the complaint be dismissed; and from a judgment in favor of the defendants the plaintiff has duly prosecuted an appeal to this court.

*Robert Fuhr* and *J. M. Futrell,* for appellant.

The appellee district has taken appellant's property within the meaning of § 22, article 2 of the Constitution. 10 R. C. L. 60, p. 68; *Id.* 58, p. 66; *Id.* 59, p. 67; *Id.* 61, pgs. 70-71; *Id.* 63, pgs. 72, 73; 13 Wall. 166, 20 L. ed. 557; 188 U. S. 444, 47 L. ed. 539. Our own court goes farther than these decisions and holds that private property shall not be damaged for public use. See 119 Ark. 166;

113 Ark. 239; 128 Ark. 250; 45 Ark. 429. See also 146 Ark. 14 on taking property. The damages claimed by appellant are within the express terms of the act creating the district. See § 9 thereof. Such a provision was not contained in the act in the cases reviewed in 149 Ark. 285, and 95 Ark. 345, on the subject of surface water, do not apply, nor has such doctrine ever been applied where the lands were within the improvement district as here. Appellant is entitled not only to damages for the land taken, but for damages done to other land. 78 Ark. 83; 51 Ark. 330.

*N. F. Lamb* and *C. D. Frierson,* for appellee.

Appellee had the right to build its levees as it did, and to leave lands unprotected by a levee in such case is not a taking within the meaning of the Constitution. 95 Ark. 345, 29 L. R. A. (N. S.) 396; 149 Ark. 285, 20 A. L. R. 296, and cases cited there. See also 230 U. S. 1, 57 L. ed. 1363; 230 U. S. 24, 57 L. ed. 1374; 241 U. S. 351, 60 L. ed. 1041; 204 Fed. 299; 249 U. S. 587; 254 U. S. 608; 9 So. (Miss.), 351; 85 Sou. (Miss.), 312; 207 Fed. 338. The Arkansas cases cited by appellant either do not concern flood water or refer to land taken in the construction of the improvement, hence are not applicable.

HART, J., (after stating the facts). Counsel for the defendants have attached to their brief what they claim is a map of the proposed drainage district, which shows the location of the levees referred to in the complaint.

Counsel for the plaintiff, in their reply brief, claim that it is the purpose of the district to build a dam across the St. Francis River, from the lower end of one of the proposed levees to the other, and to let out the water thus impounded by a lock or a gate, which may be closed at will. We cannot consider these matters.

The court sustained a demurrer to the complaint, and rendered judgment accordingly. The allegations of the bill, which are confessed by the demurrer, control in this case. Contrary to the common-law rule, under our Code every reasonable intendment and presumption is to be made in favor of a pleading, and a complaint will

not be set aside on demurrer unless it be so fatally defective that, taking all the facts to be admitted, the court can say they furnish no cause of action whatever. *Ferrell* v. *Elkins,* 159 Ark. 31.

A demurrer will not lie to a complaint if it states sufficiently but imperfectly a cause of action; but the remedy in such case is by motion to make the complaint more definite and certain. *Williams* v. *Memphis, Dallas & Gulf Railroad Co.,* 133 Ark. 188.

Tested by the rule laid down above, construing pleadings, the question in this case is whether the commissioners of a drainage district, duly organized under the statute, may erect a levee and dam which obstruct the flow of the waters of the St. Francis River in Poinsett County, and thereby injure the lands of another, and the district incur no liability.

Our Constitution provides that the right of property is before and higher than any constitutional sanction, and that private property shall not be taken, appropriated, or damaged for public use, without just compensation therefor. Article 2, § 22, of the Constitution of 1874.

It is claimed, however, that the constitutional provision that private property shall not be damaged for public use except on due compensation, does not contemplate damages resulting without legal injury, as in the case at bar. The rule is invoked that a levee district may rightfully construct a levee across sloughs, swales and other low places, which help to absorb the flood waters of a river, without liability to a riparian owner, whose lands are left between the levee and the river, and which are damaged as a result of the levee's raising the height of the flood waters. *McCoy* v. *Bd. Dir. of Plum Bayou Levee Dist.,* 95 Ark. 345, and *City Oil Works* v. *Helena Imp. Dist. No. 1,* 149 Ark. 285. The rule there announced depends upon the two legal maxims that one may use his own property as he will, and that he must not so use his own as to interfere with the legal rights of others. The sea was regarded as a common enemy to the adjacent

landowners, and any owner of land exposed to its inroads might protect himself by erecting barriers against its encroachment, and what each landowner might do for himself, the commissioners of a levee district, acting for all the landowners within the boundaries of the district, might do for them. So it was held that they might erect such defenses for the lands under their care as the necessity of the case required, leaving the other landowners in like manner to protect themselves against the common enemy.

This court applied this principle to the waters of large navigable rivers subject to extensive overflows, like the Arkansas and the Mississippi. The object in such cases is to confine the roaming flood waters of the navigable river within the confines of the levees, which, so to speak, establish new banks for the river. But, as levees are constructed for the sole purpose of protecting the lands from overflow, and, in order to do this, must prevent the ingress of water upon the adjacent lands, the raising of the depth of the flood waters upon the lands left outside the levee is a damage which must be borne by the landowners.

Assuming that the principle laid down above applies to the waters of the St. Francis River in Poinsett County as well as to the large navigable rivers of the State, the majority of the court is of the opinion that the facts alleged in the complaint, though defectively stated, take the case out of the general rule and bring it within one of the well-known exceptions, which is that the waters of a stream may not be obstructed by dams or other embankments so as to throw the water back upon the upper proprietors and thereby damage or destroy entirely the use of their property. In the very nature of the case the danger of ruin by floods, against which levees are intended to guard, renders it imperative that the board should have the fullest latitude in establishing the lines of levees. But, in establishing the lines of the levees, it must be borne in mind that they are erected for the purpose of confining the flood waters within the

limits of the levee and thereby protecting the adjacent lands from the encroachment of such flood waters.

It is a matter of common knowledge, however, that there are valleys or bottoms which are rich and fertile along all the rivers of this State, and that the width of these bottoms varies greatly. Therefore we recognize that projects having for their purpose the protection of such lands from overflow by building levees, and of draining them by constructing ditches, may be united, and one improvement district may be organized for both levees and drainage ditches.

If the commissioners had erected levees along both banks, at some distance therefrom, for the purpose of preventing the waters of the St. Francis River from overflowing the adjacent lands, the fact that the lands of the plaintiff were left outside of the levees would bring him within the rule above announced, and he could not recover compensation for his lands thereby damaged or taken. It is fairly inferable from the complaint, however, that something more than this was done. In order to prevent the waters within the banks of the levees from spreading out and overflowing the lands below the levees, a dam or embankment was constructed at the lower end of the levees, so as to impound the waters and let them out through a floodgate or floodway, at the will of the commissioners. This caused an obstruction to the flow of the waters, and threw them back upon the lands of the plaintiff, so as to destroy their use for agricultural purposes.

According to the allegations of the complaint, the St. Francis River enters Poinsett County from the north, and, for about nine miles south thereof, traverses a large area of swamp and overflowed lands, containing many thousand acres located in a low basin. The plaintiff's lands are located in the basin, and, while subject, more or less, to periodical overflows from the St. Francis River, nevertheless he was able to grow cotton, corn, hay, and other farm products, annually on his land.

The complaint alleges, further, that the drainage district has adopted plans for the construction of a levee 15 feet in height along each side of the basin and along and across the outlet thereof, thus converting the basin into an immense reservoir, with said levees as retaining walls, for the purpose of storing the water entering said basin and retarding its flow, and, in this way, enabling said water to enter a floodway to the south in such a way as to protect the lands to the south from overflow.

It is further alleged that, by so confining said water, the defendant has totally destroyed the lands of the plaintiff and the timber thereon.

This the commissioners had no right to do. They only had the right to construct the levees and to confine the waters within the banks of the levees as they flowed towards the south. Any damages which might result to the plaintiff by reason of this increasing the depth of the flood level on his lands would be a loss which the plaintiff must suffer within the rule above announced. The commissioners had no right, however, to build an embankment across the outlet of the basin between the lower ends of the levees, and thereby obstruct the flow of the flood waters and cause the same to flow back on the plaintiff's land, and destroy its use for agricultural purposes, and to destroy the timber growing on it.

The complaint alleges that a floodway was left in the southern embankment. It is fairly inferable that, by this, was meant a floodgate which could be opened or lowered at the will of the commissioners. If it did not mean this, a motion to make the complaint more definite should have been made, instead of interposing a demurrer to it.

The building of the embankment across the outlet of the basin between the lower end of the levees, in the opinion of a majority of the court, constitutes, under the allegations of the complaint, a taking or damage of the plaintiff's lands within the meaning of the provision of the Constitution above mentioned. Such act constitutes an independent cause producing damages. The principle

was realized in the case of *City Oil Works* v. *Helena Improvement District No. 1,* 149 Ark. 285. In that case a new levee was constructed along the banks of the Mississippi River, and the plaintiff's oil mill was left outside of the levee. The court held that the plaintiff could not recover for the damage caused by its mill being left outside the levee, but that it could recover for damages caused by the new levee being built across its industrial tracks.

In the application of the same principle the Supreme Court of Mississippi held that the owner of land lying between an inner and outer levee, erected to protect a district from the overflow of a river, is entitled to compensation for property destroyed by the cutting, by the levee commissioners, of the outer levee in order to use the water covering the space between the two as a cushion to protect the inner one, the result of which was to devastate the land of the claimant. *Jones* v. *Bd. of Mississippi Levee Commrs.* (Miss.), 66 So. 413, L. R. A. 1916F, p. 1294.

In short, a majority of the court is of the opinion that the building of an embankment at the outlet of the basin, between the lower end of the levees, and thereby confining the water so as to cause it to flow back upon the plaintiff's lands and destroy them, constituted an independent cause which damaged or appropriated the plaintiff's lands, and for which he was entitled to compensation, under the provision of the Constitution above set out.

It is true that, under the allegations of the complaint, a floodway was left in the embankment across the outlet of the basin between the lower end of the levees; but, as above stated, it is fairly inferable that by this was meant a flood-gate, by which the commissioners could control the flow of the water to the south, and which did obstruct its flow. This is shown by the great quantity of land which was left within the confines of the banks of the levees. As we have seen, the object of constructing levees is to confine the flood waters within the course

of the stream, and they cannot be constructed in such way as to obstruct the natural flow of the waters and cause them to flow back upon the lands of the upper proprietors and thereby damage or destroy them for the use for which they are adapted, without compensation. It may also be stated that, under the allegations of the complaint, a part of the lands of the plaintiff was actually used for the purpose of constructing the levees, and all of us are of the opinion that the plaintiff is entitled to compensation for so much of the lands as were actually taken and used in the construction of the levee.

If the court thought that the complaint was in any wise defective or indefinite, it should have treated the demurrer as a motion to make it more definite and certain.

The result of the views of a majority of the court is that the circuit court erred in sustaining the demurrer to the complaint, and for that error the judgment must be reversed, and the cause will be remanded, with directions to overrule the demurrer and for further proceedings according to law.

McCulloch, C. J., (dissenting). The allegations of the complaint are, in substance, that the land of plaintiff is situated in a low basin which is subject to overflow from the waters of the St. Francis River, and that the drainage district is about to construct a levee along both sides of the basin for the purpose of confining the waters and preventing their spread to other lands on the south. It is true that there is a further statement in the complaint that the construction of the levees, in effect, converts "said basin into an immense reservoir, with said levees as retaining walls, for the purpose of storing water entering said basin and retarding its flow." But this is a mere statement of a conclusion, and means no more than that the effect of the levees in preventing the spread of the overflow waters to other lands on the south necessarily confines the water within the levees and raises it higher on the lands in the basin. This language

does not take the case out of the operation of our former decisions (*McCoy* v. *Board of Directors of Plum Bayou Levee District,* 95 Ark. 345; *City Oil Works* v. *Helena Improvement District,* 149 Ark. 285), for the facts in those cases were that the construction of the levees which prevented the spread of overflow waters necessarily raised the height of the overflow on lands between the levee and the river. There is no allegation here that the St. Francis River, from which the overflow comes, is about to be dammed up or its waters disturbed further than to prevent them from spreading beyond the basin. The statement in the complaint that the levees are to be built on both sides of the basin "and along and across the outlet thereof" is not open to the construction that the river is to be dammed, and means no more than that the waters are to be confined within the levees so as to prevent their spread. The allegations simply present a case where there is sought to prevent the spread of waters from a stream and thereby the height of the water is raised on the land between the stream and the levee, but this is the very principle that was settled in the cases cited above, contrary to the contention of plaintiff's counsel in the present case.

Mr. Justice SMITH concurs in these views.