RAULS *v.* COSTNER.

4-6057                           143 S. W. 2d 1090

Opinion delivered October 21, 1940.

*Shane & Fendler,* for appellants.

*George W. Barham* and *J. Graham Sudbury,* for appellee.

HUMPHREYS, J. Appellee brought this suit against appellants in the circuit court of Mississippi county, Chickasawba district, to recover damages in the sum of $3,651.75 to a certain tract of land owned by him containing 28.61 acres, particularly described as the fractional south half, northwest quarter, and fractional northwest quarter, southwest quarter, section 6, township 13 north, range 9 east, in Mississippi county, Arkansas, by reason of the construction of a new levee in Drainage District 16 in said county alleging in part that in the construction thereof appellants created a "bottle neck" above his land in locating and building the new levee close to the old levee so as to divert surface water and high water and throw same upon his land at a greatly accelerated rate and in greater volume than before; and by tying the new levee into a road embankment below said land, so as to place said land in a pocket between the old and new levee resulting in damming up and impounding surface and high water, thereby diverting and backing same onto his land.

Appellants filed an answer denying these and other allegations contained in the complaint.

The cause was submitted to a jury upon the pleadings, evidence introduced by both parties and the instructions of the court resulting in a verdict and judgment against appellants for $700, from which is this appeal.

Appellants in briefing the case have made a statement gleaned from the pleadings and evidence adduced on the trial of the cause which is illuminating and helpful to an understanding of the controversy which we incorporate with a few changes in this statement rather than attempt a statement ourselves. Appellee does not suggest that the statement is incorrect in any material particular. The statement is as follows with the exception of a few changes made by us:

"Drainage District No. 16 was organized in 1916 under the Alternative Drainage District Acts. It comprises an area of 58,000 acres, which is that portion of the Chickasawba district of Mississippi county, lying

west of Big Lake and the right-hand chute of Little River. Soon after the creation of the district, appellants constructed a levee along the western banks of Big Lake and the right-hand chute of Little River which proved to be inadequate.

"In 1927, an extraordinary flood created grave damages for both the inhabitants and the lands of this section of Mississippi county. Rain waters from southeast Missouri, a basin with a watershed of more than 2,000 square miles, poured into Big Lake with great velocity. The levee of appellant drainage district, as well as the levee on the east side of Big Lake and the right-hand chute of Little River, that Drainage District No. 17 had constructed, were inadequate. The crowns and bases of the levees were too small; the barrow pits were too close to the levees; and the floodway between the levees was too narrow. In 1933, 1935, and 1937, there were more high waters; the United States engineering department, and all parties concerned, were convinced that a new levee was necessary to protect the lands of the district. Although there was no levee break in 1937, more than four-fifths of the lands in the district were covered by flood waters. This water came around the north end of the levee, from Missouri, and from crevasses in the levee south of the boundary line of the district. During each flood threat, thousands of dollars were expended to keep the levee from breaking, both by appellant district and Drainage District No. 17. In fact, Drainage District No. 17 had suffered from actual levee breaks. The gravity of the situation became apparent to Congress which had long recognized that this alluvial valley, of which Mississippi county is a part, deserved the same protection from flood waters as the lands immediately adjacent to the Mississippi River. In 1937, Congress enacted the Overton Flood Control Act, which included Big Lake and the right-hand chute of Little River in the Mississippi River flood control program. The act provided that the United States Government would construct new levees along these navigable streams, if the drainage districts would provide rights-of-way. The United States engineers prepared plans for

new levees, and as soon as these were submitted to the commissioners of both drainage districts, they agreed to co-operate with the Government, and arranged with the Reconstruction Finance Corporation for loans in order to pay landowners for the rights-of-way. The sketch will show that the new levees broaden the width of the floodway on right-hand chute of Little River from a distance of a quarter of a mile to about a mile at the nearest point. These levees will now take care of a volume of about 30,000 feet of water a second and a maximum flood with an allowance of three feet above the highest expected crest of the water.

"Appellee is the owner of a small 28.61 acre tract of land that lies in a 'V' shape along a gravel road, state highway No. 77, and angles back against the old levee, bordering the right-hand chute of Little River. This tract is shaded on the rough sketch, and is colored blue on one of the exhibits. The land is not in the Chickasawba district, but lies in the Osceola district of Mississippi county. It is neither in Drainage District No. 16 nor any other drainage district. Appellee has paid no drainage taxes of any kind. It so happens that the old levees along the right-hand chute of Little River were nearer to each other at the point of the land in suit than at most other places. The new levee on the west side of the river is about one-half mile from the land in suit, and the floodway at this point is now a mile in width.

"As has been indicated, the new levees have been completed on both sides of the right-hand chute of Little River, within the boundaries of appellant drainage district and Drainage District No. 17. During flood times, the waters of the right-hand chute of Little River, within the boundaries of appellant drainage district and Drainage District No. 17 may flow unimpeded from the Missouri line into Big Lake and southwesterly into the St. Francis River. The land in suit and all other lands between the new levees will be covered by the right-hand chute of Little River as it spreads outside its banks, but when the flood waters subside, these lands will drain according to their natural topography. The

old levee has already been leveled to the ground in many places, especially where the construction of the new levee was sufficiently close to the old levee so that the dragline could utilize that soil. In addition, appellants have offered to crevasse the old levee at any place where the landowner wants it done. Appellants have not wished to leave any obstruction in the way of the drainage of lands adjacent to the river and now lying between the new levees. The old levee along the tract of land of appellee is still standing intact, solely because he has insisted on leaving it like it is.''

Attached to the statement is a map of Drainage District No. 16 showing the location of the old levee as well as the new levee bordering on the right-hand chute of Little River and also the old and new levees on the east side of the right-hand chute of Little River and for the purpose of showing the location of the land in question and the situation before and after the new levees were built.

The undisputed evidence reflects that when the first levee was built on the west side of the right-hand chute of Little River and Big Lake, appellee's land was on the west side of the levee and protected, and that the land was situated on a navigable stream; that this levee proved insufficient to protect appellee's land and lands in Drainage District No. 16 from flood waters, but that this levee which proved to be insufficient to protect the lands in Drainage District No. 16 was located and built west of the old levee from one-half mile to a mile from the navigable stream which left appellee's land, which was not included in Drainage District No. 16, outside the levee. This court said in the case of *McCoy* v. *Board of Directors of Plum Bayou Levee District,* 95 Ark. 345, 129 S. W. 1097, that (quoting syllabæ 2 and 3):

"A levee district may rightfully build its levee across depressions, swales and low places so as to prevent the escape of flood water from a river into surrounding low lands sought to be protected, though it has the effect of raising the water higher on lands between the levee and river, without becoming liable to the owner of such intervening lands so damaged.

MAP OF
DRAINAGE DISTRICT NO. 16
MISSISSIPPI COUNTY, ARK.

WM. R. OVERTON - C.E.
BLYTHEVILLE, ARKANSAS
SEPTEMBER - 1938

SCALE OF MILES

-LEGEND-

| STATE LINES | |
| COUNTY LINES | |
| TOWNSHIP LINES | |
| SECTION LINES | |
| RAILROADS | |
| DITCHES | |
| LEVEES (OLD) | |
| LEVEES (NEW) | |
| FLOODWAY (OLD) | |
| FLOODWAY (NEW) | |

"A levee district, which builds a levee so as to protect lands from overflow of the waters of a stream at floodtime, will not, under Const. 1874, art. 2, § 22, providing that private property shall not be 'damaged for public use without just compensation therefor,' become liable for injuries to land lying between the levee and the river resulting from the flood water being raised higher between the levee and the river than before the levee was constructed."

This rule was reiterated and adhered to in the cases of *City Oil Works* v. *Helena Improvement Dist. No. 1,* 149 Ark. 285, 232 S. W. 28, 20 A. L. R. 296, and *Sharp* v. *Drainage District No. 7,* 164 Ark. 306, 261 S. W. 393.

We understand that the same rule applies where a new levee is erected that governs in the erection of an original levee and that it was applied by this court in the case of *City Oil Works* v. *Helena Improvement Dist. No. 1, supra,* where the new levee which was erected placed the lands between it and the old levee. In the instant case we understand that Drainage District No. 16 in the erection of the new levee was not and is not liable to any property owner for injuries to his lands lying between the levee and a navigable stream on account of the flood waters being raised higher than before the levee was constructed. In the instant case the undisputed evidence shows that no dam was built across the stream which caused the flood waters to back up and remain upon appellee's land. The new levee did not in any way constitute a dam in the navigable stream that interfered with the flow of waters therein. It only prevented the overflow waters in the navigable stream from running out into and onto lands west of the levee. Appellee, recognizing the fact that the new levee was not built across the navigable stream so as to obstruct the flowage therein from flood waters, alleged and attempted to prove that by the location of the new levee in relation to the old levee a "bottle neck" was created above his land resulting in surface water and high water being diverted and thrown upon his land at a

greatly accelerated rate and in greater volume by reason of the obstruction of the natural drainage on account of the new levee and crevasses made in the old levee above the "bottle neck." Appellee stated on direct examination that the old and new levees came closer together a short distance above his land which formed a kind of "bottle neck" and threw water upon his land at a faster rate than before, but on cross-examination the following questions and answers appear in his testimony:

"Q. You said something about the two levees being there and causing the water to rush through over your land at a faster rate, is that right? A. I didn't say that."

He also said that he did not want the old levee cut, but wanted it left as it was. The court then asked him whether he wanted it cut or whether he did not and he said that he did not.

We think the testimony with reference to the "bottle neck" is so uncertain and indefinite both as to the location and width thereof that it would not authorize anyone to say that it caused water to flow faster on appellee's land and to stay longer than before the new levee was built. It certainly did not have the effect of raising the water level on appellee's land and the raising of the water level was a damage, if any, for which he could not recover from the district. That is a damage which, if sustained, he must bear himself on account of being a riparian owner of land. In flood times, it would be impossible to separate any damage growing out of the construction so as to form a "bottle neck" from damage resulting from construction of the levee which raised the water level. Any conclusion the jury might reach would be entirely conjectural, so we do not think the evidence relating thereto and the effect thereof is substantial. In other words, there is no substantial evidence in the record sustaining any particular damage to the land on account of the "bottle neck" or the amount thereof.

Again, it being undisputed that appellants constructed no dam across the navigable stream so as to

back water upon appellee's land, appellee has alleged and attempted to prove that water was diverted upon, impounded upon and backed upon appellee's land by the action of appellants in "tying" the new levee into a road embankment below appellee's land, making the embankment a continuation of the new levee and putting the land in a pocket between the two levees and the high road embankment. Appellee on direct examination testified as follows:

"Q. But that road does tend to hold the water on you? A. Yes, sir, it does. Q. And that was true before the new levee was constructed just as it is now? A. Yes, sir. No, it wasn't. The new levee was tied into the hard road. That is what made it bad until the highway department cleaned it out."

Appellee's own testimony is that the tying of the new levee into the hard road made it bad until the highway department cleaned it out, and the other evidence in the case shows that no permanent damage resulted to appellee's land; that the road always blocked the water there to some extent; that during last summer when the levee was built to the road, if there had been proper openings the water could have gotten out more quickly. We do not think appellee's proof reflects that tying the new levee into the old hard-surface road met the allegation that a dam had been erected across the navigable stream below appellee's land so as to back water in times of flood over appellee's land so as to injure it. In the case of *Sharp* v. *Drainage District No. 7, supra,* the court held that a permanent dam constructed across a navigable stream at the end of a levee so as to back water upon the land involved in that case was an exception to the general rule that one who buys or owns lands adjoining a navigable stream which overflows takes the land subject to that burden of servitude. The evidence in this case does not bring it within the exception announced in the case last referred to. We think the undisputed evidence in the instant case shows that the only damage the land sustained by reason of the construction of the new levee was a raising of the water level during periods of flood and high water.

This was a damage, if any, which appellee himself must bear on account of his land being situated upon a navigable stream. The evidence does tend to show that after the water level was raised on account of the construction of the new levee it required a greater length of time for the flood waters to recede and resume their natural flow within the banks of the stream. According to this record the only permanent damage appellee sustained was that the water level was raised on account of the construction of the new levee and because his land had been left out or on the river side and that was a burden or servitude upon the land on account of its location. We think a fair construction of this record is that there is no substantial evidence to show that any permanent damage resulted to appellee's land other than the damage sustained by reason of the water level being raised on account of the construction of the new levee. Therefore, the verdict and judgment are unsupported by substantial evidence.

In this view of the record, it is unnecessary to discuss the measure of damages applicable in case appellee's land had been injured or damaged other than by the raising of the water level in the construction of the new levee.

There being no issue for the jury, the court should have dismissed the action upon the conclusion of the evidence.

The judgment is, therefore, reversed, and as the case has been fully developed the same is dismissed.