YOUNG, ADMINISTRATOR, *v.* RED FORK LEVEE DISTRICT.

## Opinion delivered May 15, 1916.

1. LEVEE AND DRAINAGE DISTRICTS—CONDEMNATION—ACT 53, ACTS OF 1905.
—Act 53, page 143, Acts of 1905, providing for condemnation proceedings, providing for proceedings by "the board of directors of the St. Francis Levee District, and all other levee and drainage districts, * * *" *held* to be a general statute and applicable to all levee and drainage districts in the State, whether organized under general or special statutes.

2. STATUTES—CONSTRUCTION—TITLE.—The title of an act may be looked to in construing the same.

3. LEVEE DISTRICTS—CONDEMNATION—RED FORK LEVEE DISTRICT—REPEAL OF FORMER STATUTES.—Act 53, page 143, Acts of 1905, *held* to repeal the special provisions of Act 93, page 169, Acts of 1891, creating the Red Fork Levee District, as amended by Act 146, page 253, Acts of 1893, with reference to condemnation proceedings by the said levee district.

4. LEVEE DISTRICTS—CONDEMNATION PROCEEDINGS—NON-RESIDENT OWNERS.—Proceedings to condemn the land of non-resident owners, by a levee district, under Act 53, Acts 1905, are *in rem*, and the assessment of damages is not required to be made by jury, unless the owner appears within a certain time and demands the same.

5. EMINENT DOMAIN—LEVEE DISTRICTS—DAMAGES—ASSESSMENT BY JURY.
—A non-resident land owner is deprived of no constitutional right, where a statute provides that his damages shall be assessed by a jury, in condemnation proceedings by a levee district, only when he appears and demands the same within a certain time, after due notice by publication.

6. EMINENT DOMAIN—NON-RESIDENT OWNER—NOTICE BY PUBLICATION.—In the absence of a showing to the contrary, it will be assumed that all steps were taken to confer jurisdiction upon the clerk, in the matter of the condemnation of land of a non-resident land owner by a levee district by the service of notice by publication.

Appeal from Desha Circuit Court; *James C. Knox*, Special Judge; affirmed.

*F. M. Rogers,* for appellant.

1. Act 53, Acts 1905, is a special act limited in its operation to the St. Francis Levee District and to lands "bordering upon and near the Mississippi River." Sections 1 and 8 specifically mention the St. Francis District; section 9 limits the act to lands bordering upon and near the Mississippi River. The act only applies to the St. Francis District. But if not, appellee has no right to condemn until it had first attempted to "acquire it by compromise or agreement with the owners." Notice to the owner is a prerequisite. Kirby's Digest, § 6055, subd. 6. If the proceeding is *in rem,* the lands at least should be described.

2. The Red Fork Levee District was created by Acts 1891, p. 169, amended by Acts 1893, p. 293. The power of eminent domain was conferred by said acts. The St. Francis Act of 1905, even if held to be a general statute, does not repeal section 18 of said special acts of 1891 and 1893. 50 Ark. 132; 51 *Id.* 159; 53 *Id.* 417; 54 *Id.* 237; 53 *Id.* 339; 60 *Id.* 59; 63 *Id.* 397; 72 *Id.* 119; 88 *Id.* 324; 93 *Id.* 621.

*X. O. Pindall,* for appellee.

1. Condemnation proceedings are not common law actions, and when they meet local constitutional requirements, and provide for due notice to parties affected, they are valid. 1 Lewis on Em. Dom., § § 311, 314; 69 Ark. 642. Even before the act of 1905 and before the case of 114 Ark. 338 in a proceeding in which it was sought to substitute an attack of an act for a failure to follow it that while a litigant had certain rights "she did not have the right to ignore a pending suit in which her rights could be ascertained and her wrongs redressed." The code forbids such unnecessary action and the courts must enforce this salutary provision. 79 Ark. 159, 160. The act gives any one dissatisfied the right to except within ten days from the notice and secure a trial by jury. Acts 1905, p. 147; Page & Jones on Taxation by Assessments, § 133; Hamilton on Law of Assessments, § 437.

2. Appellee availed itself of the provisions of the Act 1905, pp. 143-153. Warning order was issued as prescribed and published and no exceptions were filed. Appellants came in too late.

3. The act is general and repealed all other special acts. 121 Ark. 601; 88 Ark. 327; 82 *Id.* 302; 97 U. S. 546; 114 Ark. 338. The judgment is right. 50 Ark. 132; 93 *Id.* 621.

McCULLOCH, C. J. Appellee is a levee district created by special statute enacted by the General Assembly of 1891,* and appellants are severally the owners of tracts of land through which a portion of the levee was located and constructed during the year 1914. The right-of-way for the levee was condemned and damages to the owners assessed pursuant to the terms of the Act of February 24, 1905, entitled "An Act to provide a method for the exercise of the right of eminent domain by levee, drainage, and ditching districts." Acts 1905, p. 143, Act No. 53.

(1) Appellants contend that the Act of 1905 is, in the first place, inapplicable to the Red Fork Levee District for the reason that the Act of 1891,* creating that district, and the amendatory Act of 1893,† provided a different method of condemnation; and also contend that the Act of 1905 is void in some respects which affect the validity of the present proceeding. The language of the Act of 1905 is peculiar in that it provides that "the board of directors of the St. Francis Levee District, and all other levee and drainage districts organized under the laws of the State of Arkansas, are hereby authorized," etc. That language is found in the initial sentence of the first section of the act, and the same language occurs in section 8, which confers certain powers on "the board of directors of the St. Francis Levee District, or any other levee or drainage district." It is difficult to understand just what was in the legislative mind at the time this language was used, but when the ordinary effect is given to the words "all other levee and drainage dis-

---

*Act 93, p. 169, Acts of 1891.—(Reporter.)
†Act 146, p. 253, Acts of 1893.—(Reporter.)

tricts organized under the laws of the State of Arkansas," it renders the preceding designation of the St. Francis Levee District purely surplusage, for that is one of the levee districts organized under the laws of Arkansas (a special statute) and is included within the general description. The statute is, in other words, a general statute applicable to all levee and drainage districts in the State, and we have so decided in another case. *Russell* v. *Board of Directors of Red River Levee District No.* 1, 110 Ark. 20. The Red River Levee District was created under a special statute of the State, and in that respect was like the St. Francis Levee District.

It has been suggested in argument that the fact that the lawmakers saw fit to insert the name of the St. Francis Levee District indicated that the general words used were intended to be applied only to levee and drainage districts created pursuant to general laws of the State, and not to those created by special statutes, and that it was necessary to designate that particular levee district in order to bring it within the terms of the statute. We do not think that that is the proper interpretation of the language of the act, for it is too general an expression to be open to that interpretation. If the statute amounts to a general one, which is applicable at all to levee and drainage districts other than the one especially mentioned, it necessarily includes all that are created by or under the laws of the State, whether pursuant to special statutes or pursuant to the general statutes authorizing the formation of those districts. It is proper to consider the title of an act for the purpose of determining its true meaning, and we find that in the title of this act language is employed which refers to all levee and drainage districts generally and not a particular one. It is true there is certain language in section 9 of the act, declaring that "all lands bordering upon and near the Mississippi River shall be subject to public servitude," which might be construed as referring only to levee districts organized for the purpose of giving protection from flood waters of

the Mississippi River, but we can treat that language as only applying to levee districts along the Mississippi River without impairing the general force of the statute in its application in other respects to all other districts in the State. We are convinced, therefore, that the lawmakers intended to include all levee and drainage districts in the State, or at least that the language used by the lawmakers is susceptible only of that interpretation.

(3)   When the act is thus construed, it necessarily repeals the special provision in the Act of 1891,* creating the Red Fork Levee District, and the Act of 1893† amendatory thereof. *Hampton* v. *Hickey,* 88 Ark. 324. Those statutes which apply especially to the Red Fork Levee District contain no provision for condemnation other than proceedings to be initiated by the land owner for the assessment of damages. The act seems to contemplate that the directors shall have full authority to locate the levee, and that the initiative is on the land owner to institute proceedings to secure an assessment of damages. It provided that notice should be given by the land owner and that a jury should be then summoned to assess the damages. The statute also provided that that remedy should not be exclusive, but that the land owner could choose the common law right of action to recover damages for the trespass. We are of the opinion, however, that that statute was repealed by the Act of 1905 which applies to all such districts organized under the laws of the State. The Act of 1905 gives authority to levee and drainage districts to condemn rights-of-way through lands of private owners for the purpose of constructing the improvement, and provides, in substance, that on the written application of the president or secretary of any such district, the judge of the circuit court of the county shall appoint three disinterested resident land holders of the county as appraisers to assess damages, and that when the route of the right-of-way is selected, and when-

*Act 93, p. 169, Acts of 1891.—(Reporter.)

†Act 146, p. 253, Acts of 1893.—(Reporter.)

ever, it becomes necessary to "take or use or appropriate any right-of-way, land, material, or other property for levee,' drain, ditch, or canal purposes hereinbefore mentioned, or when the same has already been entered upon by them," then such district, acting through its proper officers or agents, may file a petition with the clerk of the circuit court of the county, describing the property taken or proposed to be taken, and thereupon the said appraisers shall proceed to assess the damages and make an award in writing and file the same with the clerk of the circuit court. The clerk is then required to issue a summons to the sheriff commanding him to serve the owner or owners, if they reside in the county, and make return thereof; but that "if such owner, or owners, be nonresidents of the county, or unknown to the officers of the levee or drainage district, it shall be the duty of the clerk to publish a warning order in some newspaper published in the county, for four insertions, which warning order may be in the following form:

"To (name supposed owner )and all other persons having any claim or interest in and to the following described land, situated in ............... County, Arkansas: namely (here describe the land over which the levee or drainage passes according to U. S. Surveys) are hereby warned to appear in this court within thirty days, and file exceptions to the award which has been filed in this office by the levee and drainage appraisers of this county for the appropriation of the portion of the hereinbefore described land, for the construction, or intended construction of a levee, ditch, canal, or drain, as the case may be over and across the same."

The act then further provides that if no exceptions be filed by the owners within ten days after service of summons, or within ten days of the date of the last publication of the warning order, "the court shall proceed to enter a judgment condemning such property and land for the right-of-way purposes, and a judgment in favor of the owner, or owners, of such land against the levee or drainage district for the amount awarded by such

appraisers;'' but that if exceptions be filed within the time aforesaid, and trial is demanded by either party, the question at issue shall be tried ''as other common' law cases are tried, and the owner, or owners, of the land shall be entitled to recover the value of the land appropriated, or intended to be appropriated,'' etc.

Section 4 of the statute contains the following provision with reference to payment of award: ''But, in the event the owner, or owners, of such land, material, or property being unknown, or if it is uncertain who they are, or if there are conflicting claims to the land, or to the award, or any part thereof, then the said levee or drainage district shall pay the same to the clerk of the chancery court of the proper county, for such owner, or owners, and take the clerk's receipt, as provided herein from the owner, and shall have the same recorded in the book provided for the recording of petitions; that said clerk and his sureties shall be answerable for the safe keeping of said money. That any claimants to said land may file an application in the chancery court, and set up title to said land or property, and after giving notice to all adverse claimants by summons, if residents of the county, and by warning order, if nonresidents of the county or unknown, shall have their claim to such money adjudicated and tried as other cases are tried under the rules and practice of the chancery court, and upon a final hearing the chancery court shall direct a proper disposition of the money, which judgment shall be a bar to a recovery against the levee or drainage district for any other or further compensation or damages for the construction or maintenance of such levee, ditch, drain or canal.''

(4) The proceedings in the present case are not satisfactorily abstracted by the attorneys on either side, but we understand from the meager abstract furnished that the provisions of the statute were strictly complied with in the present proceedings. Appellants were nonresidents of the county, and a warning order was issued which described the lands as required by the statute.

S. B. Anderson, one of the appellants, owned a tract of land proceeded against, but in the warning order the Anderson-Tulley Company, a corporation of which appellant, Anderson was a stockholder and officer, was named as the supposed owner of the tract. None of the appellants appeared within the time authorized for filing exceptions, and as to them there was final judgment entered by the circuit court approving the award of the appraisers. They appeared later, however, and filed petitions demanding a trial by jury. It is insisted on behalf of appellant Anderson that the judgment was void, and that he is entitled to a trial by jury, because of the giving of the wrong name as owner. It will be observed that the statute authorizes proceedings *in rem* against the lands of nonresident owners and unknown owners, and that it does not require that the name of such nonresident owner be correctly given in the warning order. On the contrary, the statute provides for the insertion of the name of the supposed owner, and it necessarily follows that any error in the mention of the name does not affect the validity of the proceedings.

That portion of the proceedings relates only to the condemnation and assessment of damages, and not to subsequent proceedings for the ascertainment of the identity of the persons to whom the money should be paid over. If the district pays the money to the wrong person, it does so at its peril, for the statute provides that if there is any uncertainty about who the real owner is, the money must be paid over to the clerk of the chancery court where proceedings are authorized in the nature of an equitable interpleader to bring in all persons who can assert an interest in the funds. The district can protect itself, therefore, by complying with that part of the statute, but, as before stated, if it voluntarily pays the money over to a supposed owner it does so at its peril for it must determine who is the real owner notwithstanding its inability to ascertain with certainty who the owner is.

(5)   We discover no reason for declaring this legislative provision invalid.  It is contended that its provisions wrongfully deprive the owner of a trial by jury for the ascertainment of damages, but the answer is that the act itself provides that there shall be a jury trial in the event the owner appears within the time given and demands such trial.  There is no express provision of our Constitution requiring the assessment of damages by a jury in this class of proceedings.  The constitutional guaranty of trial by jury in condemnation proceedings relates only to condemnations by private corporations.  Article 12, section 9, Constitution of 1874. In other words, the statute is valid in all respects material to this controversy because it gives the land owner a day in court by personal service if he resides in the county and is known, and by publication where it is a proceeding *in rem;* and also he is given a day in court by proper service of summons or warning order in the event of uncertainty as to ownership and the payment of the money to the clerk of the chancery court.  Every constitutional requirement is therefore covered in the statute.

(6)   The statute is criticised because of its failure to provide expressly upon what information the clerk shall issue the warning order for nonresidents and unknown owners.  The statute, as before mentioned, provides for personal service upon owners who reside in the county, but merely states that "if such owner, or owners, be nonresidents of the county, or unknown to the officers of the levee or drainage district, it shall be the duty of the clerk to publish a warning order," etc.  In order to give jurisdiction, there must be an allegation concerning the ownership of the property so that the clerk can determine whether there shall be issued a personal summons or a warning order.  The abstract of the record made by appellants, who are the attacking parties, fails to show how the matter was brought to the attention of the clerk, and we must assume, in the absence of a showing to the contrary, that all steps necessary to confer jurisdiction were complied with.  There was no

error, therefore, in refusing to grant appellants a trial by jury on their application made after the expiration of the time prescribed by the statute.

Affirmed.