KEITH *v.* DRAINAGE DISTRICT No. 7 OF POINSETT COUNTY.

Opinion delivered February 17, 1930.

*C. T. Carpenter,* for appellants.

*Chas. D. Frierson,* for appellee.

BUTLER, J. The appellants, Harry A. Keith and Mamie Keith, filed a complaint in the circuit court of Poinsett County, on the..............day of......................., 1922, which is as follows:

"Drainage District No. 7 of Poinsett County, Arkansas, is a drainage and levee district created under and by virtue of the Acts of the General Assembly of the State of Arkansas for the year 1917 and the acts amendatory thereof. Said drainage district, as described in said act and the acts amendatory thereof, comprises a vast area of land in Poinsett County, and includes therein all the lands in township 12 north, range 6 east in said county. Plaintiffs are the owners of south half of southeast quarter, section 27; northeast quarter, section 34, and north half of southeast quarter, section 34, all in township 12 north, range 6 east, and containing three hundred and twenty (320) acres, and all of said lands are within the boundaries of said drainage district.

"Pursuant to the powers conferred upon it by said acts aforesaid, the board of directors of said district, under the advice and directions of its engineer, prepared, adopted and filed in the office of the county clerk of Poinsett County, Arkansas, plans and specifications for the improvements to be made and constructed in said district. On the 24th day of May, 1919, said district, through

its commissioners and engineer, made, adopted and filed plans and specifications for the construction of said levees, drains, ditches and floodways, which said plans and specifications of said improvements are referred to generally as the reservoir and as the floodway. Said plans and specifications provide for the construction of a levee and drainage ditch along and upon either side of right-hand chute off Little River, and a reservoir on and near St. Francis River and St. Francis Lake in said county. Said reservoir is formed by means of the construction of a levee and drainage ditch on the west side of St. Francis River from the county line on the north, extending in a southeastern direction to a point near the foot of St. Francis Lake on the south, and on the east side of said St. Francis River and St. Francis Lake there is also established a levee and drainage ditch extending from the county line between Craighead County and Poinsett County on the north, in a southwestern direction, to the foot off St. Francis Lake in the south. Said improvement along right-hand chute of Little River, being described as follows:

"A levee and drainage ditch on each side of the right-hand chute of Little River beginning in sections 29 and 30, township 12 north, range 7 east, thence in a southwestern course through said sections 29 and 30 to section 25, township 12 north, range 6 east, on the north and west side off right-hand chute of Little River, and on the south and east side of Little River a levee and drainage ditch through sections 36 and 35, township 12 north, range 6 east, thence in a southwestern direction through sections 2, 11, 10 and 9, in township 11 north, range 6 east.

"That said levee and drainage ditch last described crosses and closes the right-hand chute of Little River, as the same traverses section 36, township 12 north, range 6 east, and diverts the waters thereof into the St. Francis River. That, beginning at a point in section 25, township 12 north, range 6 east, as shown on the map of said improvement filed May 24, 1919, there is a levee and drain-

age ditch running due north through said sections 24, 13, 12 and 1, said township and range, to the county line between Poinsett and Craighead counties on the north. That beginning at a point in section 5, township 12 north, range 6 east, on the west side of the St. Francis River, there is a levee and drainage ditch constructed in a southeastern direction through said section, and sections 8, 17, 20 and 32, in township 12 north, range 6 east, and through sections 4, 5, 8 and 9 in township 11 north, range 6 east. The whole area thus described as being a reservoir comprises about sixteen thousand acres of land, constituting and being shown as the reservoir, for the purpose of carrying the waters from the various ditches and drains established in said district, and also the water of the St. Francis River and lake, and the waters diverted as aforesaid from the right-hand chute of Little River into said reservoir. That there is also constructed across the St. Francis River in the south part of section 10, township 11 north, range 6 east, a levee and drainage ditch, whereby the natural flow of the waters of the St. Francis River, in its channel as it flows in a southeastern direction is diverted and caused to flow in a direction almost due west and into a floodway, which floodway runs in a southwestern direction through sections 9, 16, 17, 20, 21, 29, 30, 31 and 32, township 11 north, range 6 east, and sections 5, 6, 7 and 18 in township 10 north, range 6 east, and thence in a southwestern direction into the St. Francis River at a point in section 10, township 9 north, range 5 east, said floodway herein described being a part of said improvement, as shown on said map aforesaid.

"That said improvements, aforesaid, confine the waters of St. Francis River and St. Francis Lake in a space much narrower than formerly occupied by said river and said lake. That the waters of the right-hand chute of Little River are diverted, and caused to flow into the St. Francis River, and that the waters of the St. Francis Lake, at the point hereinbefore described are also diverted and caused to flow toward, and in the di-

rection of, said floodway. That said diversion, in each of the instances herein mentioned, is from the natural course and channel of the said rivers as hereinbefore stated. That said floodway hereinbefore referred to is about one-half mile in width, and the improvement therein consists of the construction of a levee and drainage ditch on either side thereof, said ditch on each side of said floodway being one hundred feet in width. That, by reason of the establishment of said improvements according to said plans and specifications aforesaid, the waters of the St. Francis River and St. Francis Lake and right-hand chute of Little River are diverted and confined as herein described, and thereby raised five or six feet in excess of the waters of said river and lake at ordinary tide, and completely submerging all of the lands hereinbefore described as belonging to the plaintiffs, which are within the reservoir hereinbefore described.

"That prior to the improvement aforesaid, all of said lands were high and above ordinary overflow of the St. Francis River. A part of said lands are in cultivation and all of said lands are susceptible to cultivation. That plaintiffs have cleared and cultivated a part of said lands, erected two dwelling houses, barns and other improvements thereon, and that said lands prior to said improvements were useful and valuable farming lands. That, when the improvements described in the plans and specifications are completed, the lands of plaintiffs will be completely submerged, and rendered useless and unfit for cultivation or occupancy.

"That, although the lands of plaintiffs are embraced within the boundaries of the district, no benefits or damages have been assessed against the same, and no order has been made assessing benefits or damages against said lands. That the defendant has appropriated all of the lands of plaintiffs to its use in the construction of said improvements aforesaid, and has failed, neglected and refused to compensate plaintiffs for the value of the lands taken and appropriated, and has refused to insti-

tute any action, suit or proceeding for the condemnation of the lands of the plaintiffs so taken, appropriated and used. That plaintiffs' lands are of the value of forty-eight thousand dollars.

"That defendant has unlawfully taken and appropriated and deprived plaintiffs of their property without due process of law in violation of article 14, § 1 of the Constitution of the United States of America. That defendant has unlawfully taken and appropriated to its own use the private property of the plaintiffs, without first making compensation therefor, in violation of article 2, § 22, of the Constitution of the State of Arkansas.

"Wherefore plaintiffs pray judgment against said defendant, Drainage District No. 7 of Poinsett County, Arkansas, for said sum of forty-eight thousand dollars ($48,000), for costs and all proper relief."

The case was continued on motion of the defendant, awaiting the action of this court in the case of *Sharp* v. *Drainage District No. 7*, on the ground that that case would be decisive of the questions in the instant case. The Sharp case was decided May 5, 1924. *Sharp* v. *Drainage District No. 7*, 164 Ark. 306, 261 S. W. 923. After that decision a demurrer was interposed to the complaint of plaintiffs, which demurrer was sustained, and to review the action of the lower court in sustaining the demurrer this appeal has been brought.

It is first insisted by the appellee that this suit was brought under the provisions of the act of the General Assembly of 1917 creating the district, and that since the passage of that act it had been amended from time to time and curative acts passed, the general effect of such acts being to materially change the plans and specifications of said improvement, and that the improvement was finally constructed on the plans as revised and altered. If in fact the levees were not constructed as alleged in the complaint, so as to injure plaintiff's land, this would be a matter of defense.

It is insisted also that the allegations of the complaint do not bring it within the rule announced in the case of *Sharp* v. *Drainage District, supra,* but in effect allege that in constructing levees plaintiff's lands were left outside and unprotected by said levees, and that therefore it was not such a taking of the property for which compensation could be had, but was such "damage, if any, which must be suffered by the individual for the benefit of the general public."

We recognize the rule laid down in *City Oil Works* v. *Helena Improvement Dist. No. 1,* 149 Ark. 285, 232 S. W. 28, 20 A. L. R. 296, and in a number of other cases, both of this court and of the courts of the United States, cited in brief for appellee, that a landowner, whose property is left outside of a levee is not entitled to damages because of the failure to protect his land or because the levee as constructed may prevent water from flowing off his land as it otherwise would, or may deepen the water in an overflow of land between the embankment and river. The court, however, is of the opinion that the allegations of the complaint are not within the above rules, but that they state with sufficient precision a cause of action under the rule announced in *Sharp* v. *Drainage District, supra.* The complaint does not allege that the lands alleged to have been damaged have been left outside the levees created, but that streams have been dammed thereby diverting the water from its natural course over the lands of plaintiffs, raising the water level much higher, and continuing it much longer than before the construction of the levees, resulting in the injury complained of. Appellee asserts that in the instant case the complaint shows on its face that these lands are simply left unprotected by the levees, not assessed, and not condemned, and not affected otherwise by the construction of the levees. We do not believe that a fair construction of the complaint justifies this conclusion. The complaint, after tracing the course of the construction of the levees, in plain language states that the levee crosses and closes

the right hand chute of Little River, and that there is also constructed across the St. Francis River a levee which diverts the waters of the chute of Little River, and of the St. Francis River from the natural flow in a southeastern direction to a western course, causing the same to flow upon the lands of the plaintiffs. In the opinion of the court this is a sufficient allegation of the taking and damage of appellants' lands within the meaning of the provision of article 2, § 22, of the Constitution of 1874. In the case of *Sharp* v. *Drainage District, supra,* the court held that, while the allegations might not be definite, yet, giving those allegations their most favorable intendment, it was fairly inferable that a cause of action was stated. But in this case no such inference need be indulged as to the allegations of the complaint. There are specific allegations as to the damming of two streams, by which the overflow is alleged to have been caused, and, as is said by the court in the case of *Sharp* v. *Drainage District, supra,* this "takes the case out of the general rule and brings it within one of the well known exceptions, which is that the waters of a stream may not be obstructed by dams or other embankments so as to throw the water back upon the upper proprietors, and thereby damage or destroy entirely the use of their property." The court further said: "If the commissioners had erected levees along both banks, at some distance therefrom, for the purpose of preventing the waters of the St. Francis River from overflowing the adjacent lands, the fact that the lands of the plaintiff were left outside of the levees would bring him within the rule above announced, and he could not recover compensation for his lands thereby damaged or taken. It is fairly inferable from the complaint, however, that something more than this was done. In order to prevent the waters within the banks of the levees from spreading out and overflowing the lands below the levees, a dam or embankment was constructed at the lower end of the levees, so

38

as to impound the waters and let them out through a floodgate or floodway, at the will of the commissioners. This caused an obstruction to the flow of the waters, and threw them back upon the lands of the plaintiff, so as to destroy their use for agricultural purposes."

The court is of the opinion that the instant case comes squarely within the rule announced in the Sharp case, *supra,* and that the circuit court erred in sustaining the demurrer to the complaint. For this error, the judgment is reversed, and the cause remanded with directions to overrule the demurrer, and for further proceedings according to law.