KEITH v. DRAINAGE DISTRICT No. 7 OF POINSETT COUNTY.

Opinion delivered March 2, 1931.

*C. T. Carpenter,* for appellant.

*Chas. D. Frierson,* for appellee.

BUTLER, J. This suit was filed by the appellant in the circuit court of Poinsett County on the 3rd day of April, 1922. A demurrer was interposed to the complaint and sustained, from which an appeal was taken to

this court, where it was decided that the allegations of the complaint stated a cause of action. The cause was remanded with directions to overrule the demurrer and for further proceedings according to law. *Keith* v. *Drainage Dist. No. 7, etc.,* 181 Ark. 30, 24 S. W. (2d) 875. Thereafter the case proceeded to trial upon the complaint, the original answer and an amendment thereto called the "separate plea of defendant," the reply to the same, and the testimony of witnesses. At the conclusion of the testimony, the court instructed the jury as to the law of the case in a number of instructions given at the instance of the plaintiff and of the defendant, and submitted the following interrogatories:

"Int. No. 1. Q. Do you find from a preponderance of the evidence in the case that the defendant diverted the waters of Right Hand Chute and the waters of the St. Francis River from their natural course, and that, as a direct result of such diversion, the lands in controversy here were damaged?

"Int. No. 2. Q. Do you find from the proof in the case that the lands in controversy here were damaged to any extent by ditches or other improvements in Mississippi County or Craighead County or in the State of Missouri?

"Int. No. 3. Q. If you answer interrogatory number one 'Yes,' then you are told to fix the damage to the land directly resulting from the diversion of said waters, as shown by the proof.

"Int. No. 4. Q. If you answer interrogatory number two 'Yes,' then fix, from the proof in the case, such damages as you find these lands sustained, by reason of said agencies, from the proof."

To interrogatories No. 1 and No. 2 the jury returned an affirmative answer fixing the amount of damage under interrogatory No. 3 at $8,000 and under interrogatory No. 4 at $4,800. After the jury brought in their answers to the aforesaid interrogatories, the trial judge, at the request of the defendant, made the following finding:

"As a finding of law and fact, the court declares that the plaintiff cannot recover because of lack of title upon which to base a recovery," and thereupon rendered judgment "that plaintiff have and recover nothing notwithstanding the verdict of the jury." From that judgment the case is here on appeal.

A description of the territory included within Drainage District No. 7, and the nature and course of the structures erected by it, are fully set out in the complaint in the case of *Keith* v. *Drainage Dist. No. 7*, 181 Ark. 30, 24 S. W. (2d) 875, *supra*, and in the cases of *Sharp* v. *Drainage Dist. No. 7*, 164 Ark. 306, 261 S. W. 923, and *Hogge* v. *Drainage Dist No. 7*, 181 Ark. 564, 26 S. W. (2d) 887.

It was alleged that the levees of the district were so constructed as to inclose a large quantity of land, a part of which was the land of the appellant, and so as to dam the main channel of the St. Francis River and the Right Hand Chute of Little River, both of which were natural water courses, thereby diverting the waters from their natural flow and impounding them on the lands of the appellant; that these lands, prior to the construction of the levees, were fertile and suitable for cultivation, and that the construction of the improvement had rendered them valueless. This allegation was denied, and much testimony was introduced, both on the part of the appellant and the appellee, as to this issue. It would unduly extend this opinion to set out this testimony in detail. It suffices to say that the testimony introduced on the part of the appellant tended to establish the truth of the allegation of his complaint and was ample to support the finding of the jury, and this is virtually conceded by the appellee.

In the briefs of counsel some space is devoted to the discussion of the question as to whether or not appellant's cause of action was barred by the statute of limitation. It is unnecessary for us to consider this question because it was not an issue in the court below. The appel-

lee did not raise this question by demurrer, or in its answer, and it is settled law that, in order to obtain the benefit of a defense of the statute of limitation, it must be pleaded either by demurrer or answer. *Shirey* v. *Clark,* 72 Ark. 539, 81 S. W. 1057; *Kelley* v. *K. C. So. Ry. Co.,* 92 Ark. 465, 123 S. W. 664; *Earle* v. *Malone,* 80 Ark. 218, 96 S. W. 1062.

Appellee takes the position that, if the trial court erred in the judgment rendered, the case should be reversed and remanded for a new trial because of certain errors in the conduct of such trial:

First, because of the refusal of the court to permit the introduction in evidence of an alleged report made by the engineer of appellee district which was offered in evidence as exhibit B to the testimony of Mr. Fairley, the engineer of the district, who testified in the case. The report offered in evidence had never been filed with the proper officials and was a lengthy document purporting to give a description of the territory and the opinion of the engineer making it as to the adaptability of the land within the levees for cultivation, together with other matters not relevant to the issues. As the engineer who testified was permitted to use the report as a memorandum and testified as to all of the material matters set out therein, there was no prejudice and no error.

Second, it is insisted that the court erred in refusing to permit a witness to testify that, if the St. Francis River had been leveed with the levees running near and parallel to its banks, the same damage would have resulted to the lands of the appellant as from the present structures. This, of course, was mere speculation, and we cannot see how the action of the court in this particular was erroneous. This witness also was asked regarding the governmental requirement of the flow to be maintained in the St. Francis River. We do not see how this was material, because, no matter what the requirement might have been, the result as found by the jury would have been that the structures damaged the land of the appellant.

Third, that, because plaintiffs were permitted to introduce a certain map showing the territory embraced within the levees and the course they ran around the territory and across the waters of the Right Hand Chute and St. Francis River. It appears that this map was prepared by the engineers of the district, filed with the board of directors on the 4th of October, 1920, by its secretary and in the office of the county clerk on November 1, 1920. This map appears to have been properly identified and in the proper depository, and was competent, although it might have been superseded by a later map. The map which it was claimed superseded the one introduced was not available to the plaintiff, and was not introduced by the defendant.

Fourth. It is insisted that the court erred in refusing to declare the law as requested by the defendant district in instructions 2 and 5. Instruction No. 2 tells the jury that the damage must be fixed as of the date when the levees and dams were completed, and instruction No. 5 reiterates that with a declaration that such structures were completed in the spring of 1926. The court was correct in refusing these instructions as we shall presently show.

Fifth, that the court erred in refusing to give instruction No. 4, requested by the defendant. It told the jury that the defendant would not be liable for diverting the surplus or flood waters by levees, dams or otherwise, so long as said waterways were permitted to carry the water to the extent of their full capacity. The court properly refused this instruction, as it is in conflict with our holding in the Sharp, Keith and Hogge cases cited, *supra*.

Sixth. Instruction No. 3, given at the request of plaintiff, is objected to by appellee. That instruction, in brief, directed the jury to find for the plaintiff if the defendant by its structures, diverted the waters of Little River into a reservoir, and if, by the construction of the levees of the reservoir and the dam across St. Francis River, the waters thereof were collected and impounded

and diverted from their natural course, flooding the land of plaintiff. The criticism is because of the use of the word "reservoir," which, it claims, was not a term established by the uncontradicted evidence. That is true. The engineer, Mr. Fairley, and the attorney for the appellant indulged in some argument as to the proper description of the territory within the structures of appellee district, the attorney preferring the use of the word "reservoir" and the engineer preferring the use of the term "storage basin" After quite a bit of argument they were unable to state the difference between a reservoir and a storage basin. Neither do we see any difference. It appears to us that the two are synonymous, but, if the appellee preferred "storage basin," it should have requested that the word "reservoir" be stricken out and "storage basin" substituted therefor. Other objections were made to the instruction, but we cannot see their merit, and certainly the instruction was not inherently wrong; and, if its phraseology was confused or ambiguous, the appellee should have made specific objection to it.

■ The real question in this case is that raised by the amendment to the answer of the defendant filed May 12, 1930, and called by it "separate plea of defendant," the gist of which is that Keith, the appellant, was not entitled to recovery "because he had lost his title." In order to properly appreciate the force of this plea, a brief history of that title is necessary. Prior to 1917 the land in controversy was the property of the United States Government, which title was acquired by Keith and patent issued to him in 1920. In 1921 these lands were assessed for levee taxes due the St. Francis Levee District. In 1922 taxes for general purposes were assessed against the lands. In June, 1923, the lands were sold for the general taxes delinquent, and in the fall of that year a decree was entered fixing the levee district's lien for the taxes of 1921 and 1922, and on December 3, 1923, said lands were sold under the decree and the levee district became the purchaser.

The fundamental doctrine that private property cannot be taken for public use without compensation requires that the owner shall receive the market value of the land at the time of the taking, and, in view of the condition of the title to the lands in controversy, as before stated, it becomes important to determine, (a) what constitutes a "taking" within the meaning of the rule, (2) the time the taking is consummated, and (c) to whom compensation must be made.

(a) This is answered by Mr. Angell in his work on Water Courses, § 465, where the doctrine is laid down that a serious interruption to the common and necessary use of property is equivalent to the taking of it, and in the case of *Pumpelly* v. *Green Bay Co.*, 13 Wallace p. 166, quoting from page 177, in a case where by reason of a dam the waters of a lake were so raised as to cause it to overflow the lands of plaintiff and to so continue to overflow such lands from the completion of the dam to the beginning of the suit, the court, in answering the argument of the defendant that there was no taking of the land within the meaning of the constitutional provision but that damage was a consequential result of a use made of a navigable stream by the Government for the improvement of its navigation, said: "It would be a very curious and unsatisfactory result, if, in construing a provision of constitutional law always understood to have been adopted for protection and security to the rights of the individual as against the Government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that, if the Government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not taken for

the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the Government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors.''

This rule was expressly approved in *Hogge* v. *Drainage Dist. No. 7, supra,* and finds support in many of our decisions and in the great weight of authority. In fact, it is recognized by the very language of our Constitution, which provides not only that private property may not be taken for public use, but also that it may not be damaged without just compensation. Therefore, when there is any invasion of private property by lawful authority for a public use and the property is damaged thereby, there is a taking within the meaning of our law, and where the damage is such as to deprive the owner of the beneficial use of his property, he may require that its value be paid him.

(b) The plans for the improvement were filed in 1919, and the evidence on behalf of the plaintiff was to the effect that the work of actual construction began in the latter part of the summer or early fall of that year, which was not disputed by Mr. Fairley, the engineer of the district, who testified that he did not remember whether the work began in 1919 or 1920. The evidence shows that, prior to 1919, of the 320 acres of land owned by the plaintiff the greater part lay upon the ridges which were extremely fertile and susceptible of successful cultivation during ordinary seasons and considered at that time, according to the testimony of a number of witnesses, very valuable for agricultural purposes. There is but little dispute that beginning with 1920 the waters of the St. Francis River began to be impounded by the construction of the levees and by 1921 or 1922 the waters rose so high and remained so long upon the land as to destroy their value for purposes of agriculture, and that

such condition remained from then until now. As previously stated, the plans for the improvement were filed in 1919, by which plans it was apparent that the structures contemplated were levees and dams such as were finally built across the Right-Hand Chute of Little River and the main channel of the St. Francis River and with a spillway leading in a southwesterly direction from the southern end with flood gates where the spillway left the line of the levees. It is insisted that the work was not completed in accordance with the plans of 1919, but under later plans filed in substitution of the first. It is nowhere shown, however, or claimed that these later plans altered the character or course of the levees and dams as affecting the lands of the plaintiff.

In the case of *Newgass* v. *Railroad Co.*, 54 Ark. 140, 15 S. W. 188, which is a leading case, and where the question for determination was the time of the taking of the land under condemnation proceedings for the right-of-way of a railroad as a basis for fixing the compensation, the court said: "It is insisted that compensation should have been assessed with reference to the value of the land taken as of the time of filing the petition, and not as of the time of the entry upon the land by the corporation. Upon this question the courts in different States have established different rules. It is held by some that the assessment should be made with reference to the time of entry; by others, with reference to the time of filing the petition; and by still others, with reference to the time of the award. (Lewis on Eminent Domain, § 477, and cases cited). The court below adopted the first rule, against the objection of the appellant who contended for the second one. We recall no case in which the question has been presented for the decision of this court; but there are references by the court to it, and, in so far as they indicate an opinion, it is favorable to the contention of appellant. Either rule is liable to operate harshly in special cases—as well against the landowner as the corporation—but we see nothing in the one con-

tended for which indicates that it would more often work harshly than either of the others; and it has the advantage of fixing a certain and definite time with reference to which the estimate must be made. Besides the corporation has the right to acquire the land. When it files its petition, it declares its purpose to appropriate it and to render just compensation to the owner. Until it has done that, it is in default; but afterwards it can do nothing more until, in the regular course of procedure of the courts, a legal ascertainment of the amount to be paid is made. As the filing of the petition is the attempt to assert the right of condemnation, and subsequent delay is without fault of either party, it seems fair to each alike that the assessment should be made with reference to value as of that date.''

*School District of Ogden* v. *Smith,* 113 Ark. 535, 168 S. W. 1089, was a suit brought by the school district to acquire title to land owned by Smith, and on the question of damages the court held that the authority of the act under which the district proceeded was similar to the power of eminent domain, and that the damage should be estimated from the time of the taking, which time the court held was fixed, and the taking consummated in contemplation of law upon the filing of the petition to condemn the land. In that case the court said: ''So here appellee was entitled to have his compensation from the time that the appellant filed its petition to condemn his land, and the jury, in awarding damages, estimated the value of the land at the time the petition was filed.'' See also *K. C. & Sou. Ry. Co.* v. *Boles,* 88 Ark. 533, 115 S. W. 375. It is clear, under the decisions cited and because of the fact that work had actually begun and the damage inflicted prior to the filing of plaintiff's complaint, that there had been an effectual taking when the complaint was filed, and the cause of action had accrued, and therefore instructions Nos. 2 and 5, referred to *supra,* requested by defendant, were properly refused.

(c) Assuming that the plaintiff's title was divested by the sale of December 3, 1923, of his land for levee

taxes delinquent to the levee district, the question is, did such divesture work a forfeiture of plaintiff's cause of action and prevent his recovery for the damage inflicted? In taking the position that this would happen, the appellee assumes that the appellant's title was lost before his cause of action accrued. In this, the appellee is clearly mistaken. As we have seen, appellant's cause of action accrued upon the filing of plans, which of themselves were sufficient to apprize the landowners of the extent and nature of the structures to be erected and the probable consequences which would ensue. It was apparent from the plans that, when the levees had been completed and the dams constructed, the entire lands within those levees would be formed into a storage basin where the flood waters of the St. Francis River might be impounded and through flood gates allowed to flow out gradually and methodically into the lower stretches of the river and thus prevent the inundation of the lands to the south of the district. This was the avowed purpose of the formation of the district, and necessarily worked the destruction of the agricultural value of the lands within the basin. Appellant was the owner of lands at that time and remained so until the consequences to be expected from the formation of the district had actually resulted.

The case of *Young* v. *Vincent*, 94 Ark. 115, 125 S. W. 658, was an action for damage to lands by the digging of a large pit at the rear end of two lots and the carrying away of the soil. The effect of the court's holding was that the proper party to maintain the action was the one who owned the land at the time of the trespass, although he subsequently sold the land to another. Appellee insists that a decision of that question was not necessary for a determination of the case, and that that case is not authority for the rule it seems to announce, and cites, as intimating a contrary doctrine, the case of *Miller Levee Dist. No. 2* v. *Dale*, 172 Ark. 942, 290 S. W. 948. It insists that in that case the defendant raised the point that the plaintiff was not the owner of the land and not the

real party in interest, and that the court apparently assumed that this would have been a good defense. Appellee has misread that case, for the point raised was that the plaintiff was not the owner of the land *at the time of the taking* and therefore had no right to maintain the action.

It is the general rule that the compensation for damages inflicted upon real property must be made to the person who owns the land at the time it is taken or injured. *Newgass* v. *Railroad Co., supra; K. C. Sou. Ry. Co.* v. *Boles, supra,* and *School District* v. *Smith, supra. Young* v. *Redfork Levee District,* 124 Ark. 61, 186 S. W. 604; *Converse* v. *Atkinson,* 142 U. S. 671, 125 Ct. 351; *Tuskeege Land Co.* v. *Birmingham R. Co.,* 161 Ala. 542, 49 So. 378; *Davidson* v. *Boston, etc. R. Co.,* 3 Cush. (Mass.) 91; *Davis* v. *Titersville Ry. Co.,* 114 Pa. 308, 6 Atl. 736. We have been unable to find any rule contrary to the one announced, and it is therefore our conclusion, inasmuch as the damage occurred potentially and in fact prior to the time of the filing of the complaint, that the plaintiff should recover, and that the court erred in its judgment.

■ This brings us, in the last place, to a consideration of the amount due the appellant under the finding of the jury in answer to the interrogatories propounded. It is the contention of the appellant that a fair consideration of the language of the interrogatories and the answers thereto force the conclusion that it was in the mind of the jury that the appellant's damage caused by the structures erected by the appellee district, and independent and exclusive of damage arising from any other source, was the sum of $8,000, but we have reached the conclusion that an analysis of the several interrogatories does not support the contention of the appellant, but that of the appellee, *i. e.,* "that the total damage from the diversion of water was $8,000 and of said total other drainage and levee districts had caused $4,800 worth"; that Drainage District No. 7 therefore had caused only

$3,200 of the damage; for if interrogatories Nos. 1 and 3 referred solely to the damage caused by the structures erected by District No. 7, instructions Nos. 2 and 4 would have been superfluous. As the jury must have had in mind the court's declaration of law No. 13 "that the measure of damages is the difference between the market value of the land before the alleged taking of the land and its value, if any, after that time; *less,* however, such damages, if any, as you find due to other causes than the defendant's structures," and, by finding the damage occasioned by other improvements, must have intended that the difference between the amount of this and that first found, should be the extent of defendant's liability.

As we have seen the trial court erred in its judgment, and for the errors indicated the same is therefore reversed, and, as the facts in the case appear to have been fully developed, the clerk of this court is directed to enter judgment here in favor of the appellant, plaintiff below, in the sum of $3,200, together with interest thereon from the date of the judgment in the court below.

SMITH, J., dissents.